Vincent **ELEUTERIO**,
Petitioner-Appellant,

v.

Louie L. **WAINWRIGHT**, etc.,
Respondent-Appellee.

No. 78–2407
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 2, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Dan P. Brawley, Lakeland, Fla., for petitioner-appellant.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Charles Corces, Jr., Asst. Atty. Gen., Tampa, Fla., for respondent-appellee.

Before CLARK, GEE and FAY, Circuit Judges.

PER CURIAM:

Petitioner, Vincent Eleuterio, was convicted of murder and sought habeas corpus relief under 28 U.S.C. § 2254 in the United States District Court for the Middle District of Florida alleging that his Fifth Amendment rights were violated. In addition, he argued that there was no competent evidence of sanity to support his conviction. The district court found these contentions to be without merit and denied relief. We affirm.

## I. FACTS

On September 20, 1973, Vincent Eleuterio shot his daughter-in-law, Sharon Ann Eleuterio. There was one witness to the shooting and there were two witnesses who saw him leaving the scene of the crime. Shortly after the shooting, police recognized Eleuterio and called out his name. Eleuterio answered, raised his hands, and asked the officer if his daughter-in-law was dead. He was arrested, advised of his *Miranda* rights at the police station and appeared to understand these rights. However, he refused to sign a Consent to Interview form. The police then asked Eleuterio "if he felt like talking about it." The testimony indicates that petitioner proceeded to relate to police the circumstances of the shooting. He stated that when he arrived at his daughter-in-law's home, she emerged from it laughing, and said to him: "So what, your son is dead." Petitioner told how he then got a gun from the glove compartment of his automobile and shot his daughter-in-law. After relating this to the police, petitioner stated that he did not wish to talk any more until he had an attorney present. His statements were admitted into evidence at trial.

There was testimony at trial from his sons that Eleuterio always had a short temper, had repeatedly threatened to kill his daughter-in-law, and had hit one son with a 4″ by 4″ board. In May of 1973 another daughter-in-law had murdered one of petitioner's sons in New York. His surviving sons differed over whether Eleuterio had become more violent than usual after his son's murder, but even the son who saw no change—the one married to Sharon Ann Eleuterio—filed a petition in July, 1973, to have Eleuterio's sanity evaluated under the Baker Act, Fla.Stat. § 394.463.

To prove his insanity defense, petitioner called two psychiatrists who had examined him a total of four times each. After the first psychiatric examination, both doctors

found that he was incompetent to stand trial, and had been legally insane at the time of the killing. On each of the subsequent three examinations both psychiatrists found him to be competent to stand trial, but continued to believe that he had been insane at the time of the shooting.

In rebuttal, the government offered three witnesses: a psychiatrist, one of petitioner's sons, and petitioner's nephew. The psychiatrist for the State testified that he had examined Eleuterio ten days before the crime, pursuant to the sanity hearing that had been initiated by his son, and that he did not find petitioner to have been suffering from a psychosis or mental disorder. The State's expert further stated that he considered the development of such a severe mental illness within ten days to be highly unlikely. He observed that petitioner was legally sane at the time of the psychiatric examination.

One of petitioner's sons testified that petitioner was able to perform his day-to-day functions, worked regularly, and had a good memory. He thought his father was unusually calm on the day of the shooting, and that his conversation then was normal. In addition, petitioner's nephew testified that petitioner's appearance and conversation on the day of the shooting were no different than they had previously been.

## II. MIRANDA WARNINGS

█ Petitioner challenges the admissibility of all statements that he made after he refused to sign the Consent to Interview form. This Court has held that such a refusal to sign does not, without more, establish the absence of an effective waiver of *Miranda* rights. *United States v. Patman,* 557 F.2d 1181, 1182 (5th Cir. 1977). In *United States v. McDaniel,* 463 F.2d 129 (5th Cir. 1972), this Court stated:

A refusal to sign a waiver may indicate nothing more than a reluctance to put pen to paper under the circumstances of custody. A detainee may still wish to discuss the matter with his detainers for any number of reasons, including a desire to exculpate or explain himself. Put an-

other way, a detainee may make statements that are quite voluntary without signing a written waiver. A court must look to all the circumstances of the detention to ascertain whether or not the refusal to sign a waiver was tantamount to a refusal to discuss . . .

463 F.2d at 135.

There is no indication in the record that Eleuterio's statements were involuntary or that the atmosphere at the police station was coercive. We find that the statements in question here "managed to remain inside that sometimes uncertain but always potent constitutional line which encircles the Government's relationships to its individual citizens." *Id.* at 136.

## III. EVIDENCE OF SANITY

█ Petitioner's second challenge to his conviction, that there was no competent evidence of sanity, must also fail. Federal habeas corpus relief is not available to review the sufficiency of the evidence, *Mercado v. Massey,* 536 F.2d 107 (5th Cir. 1976), except where there is a total absence of evidence to support a conviction. *Anderson v. Maggio,* 555 F.2d 447, 452 (5th Cir. 1977). Under Florida law, once a defendant has presented testimony of insanity sufficient to present a reasonable doubt of sanity, the defendant is entitled to an acquittal if the State does not overcome this reasonable doubt. *See, e. g., Farrell v. State,* 101 So.2d 130 (Fla.1958).

█ Petitioner alleges that there was a total absence of competent evidence of sanity, and therefore that the prosecution could not have met its burden. Eleuterio questions the validity of the testimony of the State's psychiatrist who had examined him under the Baker Act, ten days before the shooting. Petitioner alleges that a Baker Act examination involves different standards than an examination to determine criminal responsibility. Therefore, he argues that the examination ten days before the shooting was incompetent and irrelevant to a mental state ten days later. We must reject these arguments. While a Bak-

er Act examination's focus is not based on the determination of sanity necessary to fix criminal responsibility, it is certainly possible for the expert conducting such an examination to form an opinion on such matters outside the confines of the Act. We believe that a psychiatric examination ten days before a crime is no less relevant or competent than examinations, such as were conducted by the defense, months later. In short, petitioner's attack goes to the weight of the evidence, not to its total absence.

In addition, we note that two lay witnesses, petitioner's son and nephew, testified about his appearance and mental state. While this testimony may not be as impressive as the testimony of the defense's two psychiatrists, it is nonetheless relevant to petitioner's mental state on September 20, 1973 and it is competent evidence. Its weight was assessed by the jury and we decline to reassess this testimony.

We are not hearing a direct appeal but rather deciding the merits of a habeas corpus petition from a state prisoner. "To grant such relief, we must find that petitioners' conviction and resulting confinement is unconstitutional . . . Unless the record indicates a total lack of evidence, the petitioner's claim of innocence is not to be evaluated in a review of his petition." 555 F.2d at 452. Contrary to petitioner's allegations, there was not a total lack of evidence by the State. Accordingly, we find the district court was correct in denying habeas relief.

AFFIRMED.