Benjamin Neil PREACHER,
Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 79–2529.

United States Court of Appeals,
Fifth Circuit.

Oct. 1, 1980.

Rehearing Denied Oct. 30, 1980.

Curtis C. Mason, Staff Counsel for Inmates, Texas Dept. of Corrections, Huntsville, Tex., for petitioner-appellant.

Charles Sharman, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before DYER, RUBIN and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Benjamin Neil Preacher, convicted of aggravated robbery in Texas state court and sentenced to 50 years imprisonment, appeals the denial of his petition for habeas relief brought under 28 U.S.C. § 2254. He claims three bases for the relief sought: (1) a pretrial lineup was impermissibly suggestive, in violation of his Fourteenth Amendment right to due process, (2) the prosecution improperly withheld favorable evidence, and (3) the district court applied the wrong standard in evaluating the sufficiency of the evidence in support of his conviction. Finding no error, we affirm.

## FACTS

Near midnight, the evening of October 14, 1975, Ms. Beverly Gwin, an employee of a convenience store in San Antonio, Texas, was shot and robbed. One of Gwin's assailants, later identified as Preacher, entered the store and ordered a pack of cigarettes. A second man then came in and shot Gwin twice, one bullet passed through her wrist, breaking the bone, the other lodged in her neck. Gwin began to scream. The first

man commanded her to shut-up, handed her a paper bag and told her to put the money in it. This man was standing across the counter from Gwin, three to five feet away, in a well-lighted area. He wore no mask, hat or other covering, and there was nothing to obstruct Gwin's view of his face. Ms. Gwin took the money out of the cash register and handed it to him.

Gwin described the first robber to the police as a light-complected Negro male. While hospitalized for her injuries she was shown four black and white photos, including Preacher's, but was unable to make a positive identification. In December, 1975, she was shown a second display, including a photo of Preacher, and again could not make a positive identification. In May, 1976, she picked Preacher out of a live lineup, positively identifying him as the man who stood across the counter from her as she was shot and robbed. At the examining trial in July, 1976, Gwin identified Preacher as one of her assailants. Later, at the trial of the case, she identified him and, on direct examination, gave as the basis of her in-court identification her observance of Preacher on the night of the robbery.

## THE PRETRIAL LINEUP

■ Preacher challenges the admissibility of Gwin's in-court identification on the ground that the pretrial lineup, during which Gwin made her first identification, was "so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law."[1] As noted, Gwin had described one assailant as a light-complected Negro. Preacher maintains that Gwin's attention was unfairly directed to him at the lineup because (1) he was the only Negro in the lineup with light-colored skin, (2) he was positioned in the middle of the five-man lineup, and (3) Gwin twice had viewed photographs of him prior to the lineup. In evaluating this complaint, we have the guidance of substantial precedent[2] which teaches that we inquire first whether the identification procedure was impermissibly suggestive, and, if that be found, we must then determine whether there was a substantial likelihood of misidentification.[3] It is upon this dual finding that the claim of denial of due process rests. Accepting, per arguendo, Preacher's contention that the pretrial identification procedure followed in his case was impermissibly suggestive,[4] we find that in appraising the "totality of the circumstances,"[5] no substantial likelihood of misidentification existed.

■ Our conclusion that the trial court properly allowed the jury to consider the identification evidence accords with the Supreme Court's teaching that "reliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). In Brathwaite, the Court reaffirmed the factors to be considered in resolving the reliability evaluation previously spelled out in Neil v. Big-

1. Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

2. See United States v. Smith, 546 F.2d 1275 (5th Cir. 1977); Bloodworth v. Hopper, 539 F.2d 1382 (5th Cir. 1976); United States v. Gidley, 527 F.2d 1345 (5th Cir.), cert. denied, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976).

3. The decisions of this circuit establishing the "bipartite inquiry" developed in the area of photographic confrontations. We have recognized, however, that "this two-tier formulation . . . is equally applicable to situations . . . where other types of confrontation procedures have been utilized since it is the procedure itself which is being evaluated." Allen v. Estelle, 568 F.2d 1108, 1111 n.5 (1978). This view is consistent with that espoused by the Supreme Court. See Manson v. Brathwaite, 432

U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and cases cited therein.

4. Although we find it unnecessary to reach this issue, we are not convinced the alleged misconduct here rises to such constitutional proportions as was found in Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). In Foster, the seminal case in upholding constitutional attacks on unduly suggestive pretrial confrontations, the Court found the action of the police to be equivalent to telling the identifying witness, "This is the man." Id., 394 U.S. at 443, 89 S.Ct. at 1128.

5. Stovall v. Denno, 388 U.S. at 302, 87 S.Ct. at 1972.

*gers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972):

> The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Application of these criteria to the facts in the case at bar inexorably leads to the conclusion that the in-court identification was sufficiently reliable to outweigh any question which may have been raised by the alleged suggestive confrontation. The evidence showed that Gwin was standing within a few feet of Preacher in a well-lit area of the store. Her view of him was unobstructed; Preacher wore no mask, covering or disguise. There were no other customers in the store at the time. Gwin had ample reason to direct her full attention to her assailants. It cannot be gainsaid that one who has just been shot, and who then is ordered to empty the cash register into a bag handed to her, is more than a mere "casual observer."[6] Although the description of Preacher which Gwin gave to the police soon after the robbery was limited, it was accurate and at no time did she identify anyone else. Her identifications of Preacher at the lineup, examining trial and trial were unequivocal. We recognize that the lineup identification did not occur until more than seven months after the robbery, and that the Supreme Court referred to such a time lapse as "a seriously negative factor in most cases."[7] We are convinced, however, that the quality of the other evidence overcomes this negative factor.

## PROSECUTORIAL MISCONDUCT—WITHHOLDING OF EVIDENCE

■ Preacher charges prosecutorial misconduct in the withholding of favorable evidence. From the briefs and oral argument we are assuming that Preacher is claiming that he was entitled to discover the photographs used in the two displays and that he would use them in support of his claim of impermissible suggestiveness. The district court found no merit in this complaint. Viewing the totality of the record, we agree. We do not condone the withholding of any evidence favorable to the accused under any circumstances. *See United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We do not find such a withholding occurred here.

## STANDARD OF REVIEW OF THE EVIDENCE

■ Preacher's final contention is that his conviction is based on insufficient evidence. The district court applied the rule which prevailed prior to *Jackson v. Virginia*,[8] to the effect that habeas relief was available only upon a showing that there was a total absence of evidence in support of the conviction. *See Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960); *Eleuterio v. Wainwright*, 587 F.2d 194 (5th Cir.), *cert. denied*, 443 U.S. 915, 99 S.Ct. 3106, 61 L.Ed.2d 879 (1979). In *Jackson* the Supreme Court held that the "no evidence" standard of review does not adequately protect a defendant in a criminal proceeding. The *Jackson* mandate is quite clear:

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

443 U.S. at 324, 99 S.Ct. at 2792. Furthermore, the Court states that "the standard

---

**6.** *Neil v. Biggers*, 409 U.S. 188, 200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (lapse of seven months between rape and confrontation).

**7.** *Id.*, 409 U.S. at 201, 93 S.Ct. at 383.

**8.** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." [9]

Applying the more rigorous *Jackson* standard of review to the facts of this case, while specifically reserving and deferring any decision whether *Jackson* is to be applied retroactively,[10] we conclude that Preacher is not entitled to habeas relief. Gwin, who never identified anyone else as the perpetrator, positively identified Preacher at the trial, and gave the basis upon which she made the identification. She was subject to searching cross-examination. On cross-examination she was asked about pretrial identifications. On the evidence presented, a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." The Texas jury could have and it did.

The judgment of the district court is AFFIRMED.

9. *Id.* at 324 n.16, 99 S.Ct. at 2792 n.16.

10. In doing so we follow the trail blazed in *Sims v. Hopper*, 603 F.2d 581 (5th Cir. 1979).