UNITED STATES of America, Plaintiff-Appellee,

v.

Sam TOMBRELLO, Jr., Floyd Leon Watson, Jimmy Lee Wright, Defendants-Appellants.

No. 81–7181.

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 1982.

Rehearings Denied March 8, 1982.

486

Fred Blanton, Birmingham, Ala. (Court Appointed), for Tombrello.

James E. Harris, Birmingham, Ala. (Court Appointed), for Watson.

Walker Norris, Birmingham, Ala. (Court Appointed), for Wright.

Bill L. Barnett, Holly L. Wiseman, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before TUTTLE, HENDERSON and HATCHETT, Circuit Judges.

HENDERSON, Circuit Judge:

The appellants, Sam Tombrello, Floyd Leon Watson and Jimmy Lee Wright were indicted by a grand jury in the United States District Court for the Northern District of Alabama. Count I of the indictment alleges that the three defendants conspired to transport stolen property worth at least $5,000.00 in interstate commerce (18 U.S.C. § 371). Tombrello was charged in Count II with the receipt of a firearm while under indictment for a felony (18 U.S.C. §§ 922(h)(1), 924(a)). Count III alleges that Tombrello and Watson, aided and abetted by each other, knowingly carried a firearm during the commission of a felony (18 U.S.C. §§ 924(c)(2), 2. Wright was charged in Counts IV and VI with the receipt of a firearm after having been convicted of a felony (18 U.S.C. §§ 922(h)(1), 924(a). Count V accuses Wright and Watson, aided and abetted by each other, with carrying a firearm in the commission of a felony (18 U.S.C. §§ 924(c)(2), 2. All three were convicted of each count for which they were indicted.

On appeal the appellants assign as error (1) the lack of proof that they conspired to transport stolen goods worth $5,000.00 as required by 18 U.S.C. 2314,[1] (2) the admission of certain recorded statements between Tombrello and agents of the Federal Bureau of Investigation (FBI) and (3) that the conduct of government agents amounted to entrapment as a matter of law. Tombrello challenges the admission of the docket entries from the minutes of the Tenth Judicial Circuit Court of Jefferson County, Alabama to prove the pending indictment against him alleged in Count II. Watson also complains that the trial court should have granted his motion for a severance. Finding no error, we affirm the convictions.

On October 27, 1980, Tombrello telephoned an acquaintance, "Red" Gore, seeking assistance in planning a series of burglaries in Alabama. To achieve this purpose, Tombrello asked Gore's help in locating someone in the Chicago area skilled in safe cracking and disarming burglar alarms. Unfortunately for Tombrello, Gore, who was already in trouble with law enforcement officials, promptly reported the conversation to the FBI. The next day, on October 28, 1980, Robert Martin, a special employee of the FBI posing as a member of the "Chicago syndicate," called Tombrello to offer his support in the upcoming enterprise. Martin agreed to the monitoring and recording of the conversation. Tombrello, unaware of the caller's true identity, offered to fly to Chicago the next day to meet with his new partners. On October 29, 1980, Tombrello met in a hotel room at the Chicago airport with Martin and FBI Agent Robert Pecoraro and told of his plans to rob the store and residence of Thomas Summerville in Eutaw, Alabama. On the following day, October 30, 1980, Tombrello, who had returned to Alabama, again received a phone call from Martin and discussed the plan. On November 5, 1980, the group met again in Alabama. FBI Agent John Dolan and appellant Watson attended this meeting and Watson was introduced as the "mastermind" of the robbery of the Summerville home and store. All the details were worked out at this time. Everyone agreed that the robbery would take place the following day, November 6, 1980, and that Tombrello and Watson would procure the necessary guns. On November 6, 1980, Wright joined the band and provided two pistols which were to be used in procuring the cooperation of the Summervilles.[2] At this session, it was agreed that one of the FBI agents would enter the

\* \* \* \* \* \*

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

---

1. Establishing that goods of the value of $5,000.00 were transported in interstate commerce is a necessary element of 18 U.S.C. § 2314. That code section provides in part:

 Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, . . . .

2. The conspirators, apparently abandoning the original idea of forcefully cracking the safe, needed Thomas Summerville's aid in providing the combination. To this end, they discussed torturing Mrs. Summerville as a means of securing his cooperation.

residence first and then summon the others when the way was clear. While enroute to the Summerville home, Tombrello assured his Chicago associates that the theft would net $250,000.00 in cash as well as diamonds and gold. Record, Vol. IV at 707. The conspirators also agreed that the loot should be "fenced" in Chicago. Record, Vol. IV at 709. Upon arrival at the scene, everything went according to plan, except when the call came and the appellants arrived in the house they found themselves surrounded by well-armed FBI agents.

As stated earlier, Count I of the indictment charges all three appellants with conspiracy to transport stolen property in interstate commerce. Federal jurisdiction over the substantive offense of transportation of stolen property in interstate commerce is predicated on the goods having a value of at least $5,000.00. 18 U.S.C. § 2314. The appellants contend that the trial court had no jurisdiction over the conspiracy count because there was no evidence to show that the robbery, if successful, would have netted $5,000.00 or more. The government disputes this assertion and claims that, in any event, such a showing is not necessary because the defendants clearly believed that their illegal labors would be rewarded with more than the jurisdictional amount. The evidence discloses that the conspirators expected to reap several hundred thousand dollars from the robbery. Because we hold that this was all the proof necessary to satisfy the jurisdictional requirements, there is no need to reach the question of the value of goods in the Summerville home on the day of the aborted robbery.

Neither this circuit nor the former Fifth Circuit has been directly confronted with the precise problem of whether the jurisdictional requirements for a conspiracy to violate 18 U.S.C. § 2314 are met by a showing that the anticipated worth of stolen property exceeds $5,000.00, an essential element of the substantive offense. We find no difficulty in following the other circuits by holding that proof of the conspirators' belief that the robbery would yield more than the jurisdictional amount is all that is necessary to sustain a conspiracy conviction. *Accord, United States v. Rosner*, 485 F.2d 1213 (2d Cir. 1973) *cert. denied*, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); *Cave v. United States*, 390 F.2d 58 (8th Cir.), *cert. denied*, 392 U.S. 906, 88 S.Ct. 2059, 20 L.Ed.2d 1365 (1968); *Carlson v. United States*, 187 F.2d 366 (10th Cir.), *cert. denied*, 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367 (1951); *see Osborn v. United States*, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966); *United States v. Fellabaum*, 408 F.2d 220 (7th Cir.), *cert. denied*, 396 U.S. 858, 90 S.Ct. 125, 24 L.Ed.2d 109 (1969); *cf. Lubin v. United States*, 313 F.2d 419 (9th Cir. 1963) (a plan to commit an act which is not a federal offense is not a criminal conspiracy even if done in the belief that it was a federal offense). The appellants' argument to the contrary fails to recognize the difference between a conspiracy and the substantive offense.

A conspiracy and the related substantive offense which is the object of the conspiracy are separate and distinct crimes. *United States v. Romeros*, 600 F.2d 1104 (5th Cir. 1979), *cert. denied*, 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980); *United States v. Ragano*, 520 F.2d 1191 (5th Cir. 1975), *cert. denied*, 427 U.S. 905, 96 S.Ct. 3192, 49 L.Ed.2d 1199 (1976). The law of conspiracy serves two purposes not present in the substantive offenses. It protects "society from the dangers of concerted criminal activity" and "identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it. . . ." *United States v. Feola*, 420 U.S. 671, 693–94, 95 S.Ct. 1255, 1268–1269, 43 L.Ed.2d 541 (1975); *United States v. Beil*, 577 F.2d 1313 (5th Cir. 1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1978). The illegal conspiracy is complete regardless of whether the crime agreed upon is actually consummated, *United States v. Feola, supra*, and a defendant may be convicted of conspiracy even though he is acquitted of the substantive count. *E.g., United States v. Romeros, supra*.

■ Since the essence of conspiracy is an agreement to commit an unlawful act, *Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), the government need only show the agreement and an overt act by one of the conspirators in furtherance of the conspiracy. *United States v. Romeros, supra; United States v. Wieschenberg*, 604 F.2d 326 (5th Cir. 1979). There was ample evidence here that the appellants fully intended and certainly hoped to transport property worth more than $5,000.00 in interstate commerce. After agreeing to this unlawful plan, the conspiracy was complete when the first overt act was perpetrated to advance its cause. The appellants here would have been no more nor less culpable whether the house they intended to rob actually contained the wealth they were expecting to find or was empty. To require the consummation of the robbery so as to arrive at a value of the property actually stolen would offend both common sense and the purposes behind the conspiracy law. *See United States v. Feola, supra.*

■ The appellants' contention that they were entrapped as a matter of law because of the conduct of the FBI agents is equally without merit. The FBI agents posed as mobsters from Chicago and accompanied the unsuspecting conspirators in their unsuccessful venture. The crucial issue in entrapment cases is whether the defendants were predisposed to commit the crime. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *United States v. Webster*, 649 F.2d 346 (5th Cir. 1981) (*en banc*). There can be no serious claim to the contrary here. Tombrello initiated contact with Gore seeking assistance in achieving the unlawful goal. Watson had "cased" the scene of the crime in order to devise a plan of entry and Wright joined the group without having previously met the undercover FBI agents. The appellants provided the guns and explained the operation to their Chicago "partners."

This evidence is more than sufficient to demonstrate their predisposition.

■ The appellants next complain of the admission of the tapes of conversations between Tombrello and the FBI agents made on October 28, 29 and 30, 1980. They concede, of course, the admissibility of co-conspirator's hearsay statements made in the course and in furtherance of the conspiracy, Fed.R.Evid. 801(d)(2)(E), but argue that the evidence shows that no conspiracy existed until November 5, 1980, (Watson's first appearance). For this reason they urge that the district court erred in admitting tapes of conversations between Tombrello and FBI agents made in late October.[3] The tapes were initially admitted for the limited purpose of providing the factual background, but after the trial judge ruled there was a preponderance of independent evidence showing the existence of a conspiracy and the defendants' involvement in it, the tapes were admitted as evidence against all three defendants on the conspiracy count.

■ The rationale for both the conspirator-hearsay exception and its limitations is the notion that conspirators are partners in crime and therefore agents of one another. Just as the declarations of an agent bind the principal only when the agent acts within the scope of his authority, so the declaration of a conspirator must be made in furtherance of the conspiracy charged in order to be admissible against his partner. *Anderson v. United States*, 417 U.S. 211, 218 n. 6, 94 S.Ct. 2253, 2259 n. 6, 41 L.Ed.2d 20 (1974). It is for this reason that co-conspirators' hearsay statements made after the termination of the conspiracy are not admissible, *e.g. United States v. Postal*, 589 F.2d 862 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979), and the same rationale dictates that co-conspirators' statements made before the inception of the conspiracy do not fall within this exception to the hearsay rule. *Hawkins v. United States*, 417 F.2d 1271, 1273 n. 1. (5th Cir.), *cert. denied*, 397 U.S. 914, 90

---

**3.** The October agreement between Tombrello, Martin and Pecoraro cannot form the inception of the conspiracy because it takes two to con-

spire and government agents or informers are not true conspirators. *United States v. Martino*, 648 F.2d 367 (5th Cir. 1981).

S.Ct. 917, 25 L.Ed.2d 95 (1970); *United States v. Vaught*, 485 F.2d 320 (4th Cir. 1973); *see, United States v. Holder*, 652 F.2d 449 (5th Cir. 1981); *United States v. Miranda-Uriarte*, 649 F.2d 1345 (9th Cir. 1981).

 While this principle is correct as a general rule, we are not persuaded that it fits the facts of this case or, assuming it does, that there was any prejudicial error in the admission of Tombrello's initial conversation with the government agents. At the November 5, 1980 meeting with the undercover FBI agents, Tombrello introduced Watson as the "mastermind" of the Summerville robbery. Watson stated that he had been planning the job for over a year and had "cased" the scene of the crime about nineteen times. It was only because he did not have the "right" people to assist him that he was unable to execute his scheme earlier. Tombrello's purpose in contacting Red Gore was to obtain the skilled help which Watson needed to commit the Summerville robbery.

 In light of these facts, we think it logical to infer that Tombrello and Watson conspired to commit the crime on or before October 28, 1980. Since the October statements were therefore made during the course of the conspiracy, it was not error to admit them. Wright also has no cause for complaint. Assuming that he subsequently joined the ongoing conspiracy, "an otherwise admissible declaration of one co-conspirator is admissible against members of the conspiracy who joined after the statement was made." *United States v. Holder*, 652 F.2d 449 (5th Cir. 1981); *United States v. Worthington*, 642 F.2d 150 (5th Cir. 1981).

 Even if there were no basis for the admission of the tapes, we cannot say that any of the appellants' substantial rights were affected. Fed.R.Crim.P. 52(a). It would be hard to imagine a factual situation more incriminating than the one presented in this case. Even without the October tapes, there were recorded conversations in which the appellants carefully planned their illegal enterprise. The con-

spirators discussed the means of entry, the possible use of torture and the subsequent disposal of the stolen goods in Chicago. Moreover, in the October discussions Tombrello never mentioned Watson or Wright or implicated himself in a criminal conspiracy. Any harm comes only through Watson and Wright's subsequent association with Tombrello and not by way of hearsay testimony showing their involvement in the plan. The October tapes, then, actually had very little incriminating value with respect to the conspiracy count. In view of the mountain of unimpeachable and thoroughly incriminating evidence, the admission of the tapes, even if error, was certainly harmless.

 During the trial and in this court Tombrello objected to the admissibility of evidence used against him to prove Count II. An essential element of the crime charged in that count is proof that the defendant was "under indictment for a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(h)(1). In an effort to satisfy this requirement, the government introduced certified exemplified copies of docket entries from the Alabama circuit court which showed that on the day alleged Tombrello was under indictment for a state felony and that the case had been placed on the consent docket. The district court took judicial notice that the state crime for which Tombrello had been indicted carried a penalty of more than one year. Tombrello does not question the reliability of the docket entries but claims that they are not the "best evidence" of his indictment and were therefore inadmissible. We disagree. The "Best Evidence Rule" provides that the original document must be produced in order to prove the content of any writing, recording or phonograph. Fed.R.Evid. 1002–1006. Here, it was not enough to show merely that Tombrello had been indicted; the government was instead required to prove that he was "under indictment" at the time of the offense. The indictment alone would have been insufficient for this purpose because it could have subsequently been dismissed. The records in evidence, however, proved Tombrello's *status* at the time of the

offense as being "under indictment." The docket entries did not act as a substitute for the indictment, but rather were "original documents" demonstrating that on the day in question Tombrello had been indicted and that the indictment was still pending.[4] *See* Fed.R.Evid. 1001(3). The admission of certified exemplified copies of these entries was therefore proper. Fed.R.Evid. 1005. Furthermore, even if the docket entries were "duplicates," Fed.R.Evid. 1003 permits their introduction because (1) no genuine issue was raised as to the authenticity of the original and (2) under the circumstances, it was fair to admit them.

 Finally, Watson attacks the trial judge's refusal to grant his motion for severance. He contends that he should not have been forced to stand trial with Tombrello because Tombrello was a "big talker" and a "targeted man" who was destined for conviction. Watson urges that his entrapment defense was impaired because he was unable to elicit certain information concerning the FBI's alleged desire to convict Tombrello. A motion for relief from prejudicial joinder is addressed to the sound discretion of the trial court and the judge's decision will not be disturbed absent a clear showing of abuse. Fed.R.Crim.P. 14; *United States v. Wasson,* 568 F.2d 1214 (5th Cir. 1978); *United States v. Rhodes,* 569 F.2d 384 (5th Cir.), *cert. denied, Waites v. United States,* 439 U.S. 844, 99 S.Ct. 138, 58 L.Ed.2d 143 (1978). Any possibility of prejudice must be weighed against the interest of judicial economy. To sustain such a motion, "the defendant must be unable to obtain a fair trial without a severance and must demonstrate compelling prejudice against which the trial court will be unable to afford protection." *United States v. Swanson,* 572 F.2d 523, 528 (5th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978). Here, none of the defendants testified at the trial and all of the evidence relating to

the conspiracy count would have been admissible against each defendant at a separate trial. As mentioned earlier, the issue in Watson's entrapment defense was not whether the FBI wanted to convict Tombrello, but whether Watson was predisposed to commit the crime. The trial court was clearly correct in denying the motion to sever.

AFFIRMED.

---

4. We have found no cases defining "original document" in this context. The Notes of Advisory Committee on Proposed Rules state only that "in most instances, what is an original will be self-evident...." Since it is not self-evident here, we look to the purposes of the "Best Evidence Rule" and note that discovery of court records is easily had by either party and such documents are reliable. *See Robertson v. M/S Sanyo Maru,* 374 F.2d 463 (5th Cir. 1967); McCormick on Evidence, § 231 (1972).