UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael HARPER, Nathaniel S. Thurston, Defendants-Appellants.

No. 81–5138.

United States Court of Appeals,
Eleventh Circuit.

July 16, 1982.

Certiorari Denied Oct. 12, 1982.

See 103 S.Ct. 229.

Lawrence N. Rosen, Asst. Fed. Public Defender, Miami, Fla., for Harper.

Joel Kaplan, Robyn J. Hermann, Miami, Fla., for Thurston.

Linnea Snyder Johnson, Jon Allen May, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before VANCE, HATCHETT and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this direct criminal appeal, defendants appellants Michael Harper and Nathaniel S. Thurston each were convicted of one count of conspiracy to rob banks and savings and loan associations, three counts of bank robbery, and three counts of assault during the commission of the bank robbery, in violation of 18 U.S.C.A. § 371 (West 1966), and 18 U.S.C.A. § 2113(a), (d) (West 1970 & Supp.1982). The district court sentenced each defendant to three consecutive seven-year terms, and to one concurrent five-year term. We affirm.

## I. FACTS

This case arises out of three bank robberies committed in southern Florida in 1980: (1) the February 28, 1980, robbery of the Peoples Liberty National Bank ("Peoples Bank") in Miami, Florida; (2) the March 28, 1980, robbery of the Peninsula Federal Savings & Loan Association ("Peninsula Bank") in North Miami Beach, Florida; and (3) the April 30, 1980, robbery of the Bank of Hallandale and Trust Company ("Hallandale Bank") in Hollywood, Florida. According to the government, the banks were all in the "same vicinity" in southern Florida, with the first two banks in northern Dade County and the third bank in southern Broward County, just over the Dade County line.

The two robbers of the first bank were casually dressed, wearing jeans. One robber carried a "silver" gun, the other a "black" gun. One robber wore a dark windbreaker and a navy blue ski cap, the other a stocking mask. One robber carried a briefcase into which the stolen money was placed. The security guard evidently was not harmed during this robbery.

The two robbers of the second bank also were casually dressed, wearing jeans. Both robbers carried a gun. One robber wore a dark blue ski cap, the other a stocking mask. One robber carried a canvas bag into which the stolen money was placed. The security guard was struck by one of the robbers when the guard resisted the robbers' efforts to take the guard's gun.

The three robbers of the third bank wore suits. Apparently all three robbers carried guns. Two wore wide-brim hats, the third wore a stocking mask. They put the stolen money into "sacks." The security guard was also struck at the beginning of this robbery.

According to the superseding indictment, Harper and Thurston, along with Roderick Taylor and Harry Patterson, conspired to rob these three banks. The indictment alleged that only Harper and Thurston actually participated in the robbery of each of the banks, but that they were aided by Taylor and Patterson as to two of the banks. The alleged getaway driver for the second robbery, Taylor, testified for the government and was not tried. The alleged third participant in the third robbery, Patterson, received a judgment of acquittal at the close of the government's case. Thus, the case went to the jury on the conspiracy

and substantive counts with only Harper and Thurston as defendants.

## II. ISSUES

This case involves four issues: (1) whether the district court improperly denied severance of the offenses, (2) whether a witness' in-court identification of one defendant was impermissibly tainted by a prior encounter with the defendant in the courthouse hallway, (3) whether the government's attorney improperly assisted a witness' in-court identification of one defendant, and (4) whether the government introduced sufficient evidence to establish one defendant's involvement in one of the robberies.

## III. SEVERANCE OF OFFENSES

Harper contends that the district court improperly denied his motion to sever the offenses charged, so that each bank robbery could be tried separately. Harper argues that because of the denial of severance, the jury (1) impermissibly cumulated the evidence concerning each of the robberies so as to find him guilty of all three, and (2) inferred guilt as to the Peoples and Peninsula Bank robberies for lack of an alibi, because alibi witnesses were offered only as to the Hallandale Bank robbery. In support of his first argument, Harper notes that his first trial, which involved only the Peoples Bank robbery, resulted in a hung jury, whereas his second trial resulted in a guilty verdict as to all three robberies. In response, the government argues (1) that separate trials would not have cured the alleged cumulation of evidence, because evidence of all three robberies would have been admissible in a separate trial of each robbery, and (2) that the jury was able to consider separately the evidence of each robbery because of the well-organized presentation of evidence and because of the cautionary jury instructions. We conclude that the district court did not improperly deny Harper's severance motion.

 The district court's denial of a motion for severance of offenses under Fed.R. Crim.P. 14 is reviewable only for abuse of discretion. *E.g., United States v. McCulley,* 673 F.2d 346, 349 (11th Cir. 1982); *United States v. Kabbaby,* 672 F.2d 857, 861 (11th Cir. 1982); *United States v. Salomon,* 609 F.2d 1172, 1175 (5th Cir. 1980). In order to demonstrate an abuse of discretion, the defendant must establish that the joint trial subjected him not just to some prejudice, but to compelling prejudice against which the district court could not afford protection. *E.g., United States v. Kabbaby,* 672 F.2d at 861; *United States v. Tombrello,* 666 F.2d 485, 492 (11th Cir. 1982) (quoting *United States v. Swanson,* 572 F.2d 523, 528 (5th Cir.), *cert. denied,* 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978)); *United States v. Staller,* 616 F.2d 1284, 1294 (5th Cir.), *cert. denied,* 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980). *See generally Criminal Procedure Project, 1980–81 Term, 70 Geo. L.J.* 365, 578–80 (discussing defendant's burden of establishing compelling prejudice). Harper simply has not demonstrated compelling prejudice.

First, the hung jury in the first trial does not persuade us that the jury in the second trial impermissibly cumulated the evidence. A jury may not be able to reach a verdict for many reasons. The different results reached by the two juries simply may reflect the honest, but differing, opinions of two groups of people, properly considering as to each robbery only the evidence relating to that robbery, but making different credibility choices concerning witnesses, etc.

Second, the prejudice asserted by Harper, with respect to the presentation of alibi witnesses only as to one robbery, is hardly compelling. Harper argues that because he presented alibi witnesses only as to one robbery, the jury was likely to infer that he had no alibi as to the other two robberies and thus that he was guilty of the other offenses. In our view, this contention is speculative. An equally plausible inference from the failure to present an alibi witness is that the defendant was elsewhere at the time of the crime, but was alone. Further, the jury was instructed (1) that the government, not Harper, bore the burden of proof with respect to each element of the offenses

charged, including Harper's participation in the robberies, and (2) that Harper had no duty to present any evidence or to call any witnesses in the case.

■■■■ The parties hotly dispute whether evidence of all three bank robberies would have been admissible as extrinsic offenses under Fed.R.Evid. 404(b) in separate trials of each robbery. We need not and do not address this question. It is true that the admissibility in severed trials of the same evidence admissible in a joint trial, albeit for different purposes, sometimes is considered in evaluating a defendant's claim of compelling prejudice from the denial of severance. *E.g., United States v. Tombrello*, 666 F.2d 485, 492 (11th Cir. 1982) (severance of defendants properly denied in part because all of the evidence relating to conspiracy count would have been admissible against each defendant in a separate trial). However, such admissibility is not required in order for the denial of severance to be within the district court's discretion. Indeed, in one case involving a challenge to the denial of severance of two bank robberies, the former Fifth Circuit upheld the denial, largely on the basis of cautionary jury instructions, and expressly declined to reach the government's argument that evidence of both robberies would have been admissible in separate trials of each robbery. *United States v. Morris*, 647 F.2d 568, 570–71 (5th Cir. 1981). In this case, aside from the hung jury and alibi arguments rejected above, Harper does not point to any particular characteristics of his trial in order to carry his burden of demonstrating compelling prejudice. The evidence as to each bank robbery was presented to the jury in a well-organized fashion, with the testimony of witnesses and the relevancy of physical evidence always tied to the particular bank robbery in question. Thus, the jury was not confused on the issue of which evidence pertained to which offenses. Further, the district court carefully instructed the jury that the defendants were not required to produce any witnesses or any evidence, that the government bore the burden of proof with respect to each element of the offenses charged,

including the defendant's participation in the robberies, and that each offense and the evidence pertaining to it should be considered separately.

Accordingly, we hold that the district court did not abuse its discretion in denying Harper's motion for the severance of offenses.

## IV. IN–COURT IDENTIFICATION OF HARPER

■■ Harper contends that Nicholas Tisi's in-court identification of Harper as a perpetrator of the Hallandale Bank robbery was impermissibly tainted by Tisi's encounter with the defendants on the day before his testimony. Evidently, Tisi was sitting on a bench outside the courtroom, waiting to be called to testify, when he saw the defendants walk down the hall with their attorneys. We conclude that Tisi's subsequent in-court identification of Harper was not impermissibly tainted by this encounter.

The test for whether a witness' in-court identification of a defendant is impermissibly tainted by a prior encounter between the witness and the defendant is as follows:

> First, as a threshold inquiry, the Court must decide whether the identification procedure was unnecessarily suggestive. A finding of impermissible suggestiveness raises concern over the reliability of identification and triggers closer scrutiny by the Court to determine whether such a procedure created a substantial risk of misidentification.

*Allen v. Estelle*, 568 F.2d 1108, 1112 (5th Cir. 1978); *accord, Preacher v. Estelle*, 626 F.2d 1222, 1223 (5th Cir. 1980), *cert. denied*, 450 U.S. 930, 101 S.Ct. 1389, 67 L.Ed.2d 362 (1981). Applying the first part of the test to this case, we doubt that the facts of the challenged encounter rise to the level of impermissible suggestiveness. First, the encounter was inadvertent, and not staged by the government. Second, the only individuals accompanying the defendants were their lawyers. No police officers were with them. Third, although the defendants were wearing handcuffs, Tisi testified, out of the

jury's presence, that he saw no handcuffs on the defendants and that he thought everyone in the group had their hands at their sides. Fourth, Tisi also testified that the hallway outside the courtroom was crowded with people walking down the corridor in the same manner as the defendants, that the group in question did not stand out in any way, and that he paid no particular attention to them.

Assuming *arguendo* that some elements of this encounter were unduly suggestive, we conclude that the facts of the encounter did not create a substantial risk of misidentification. Tisi was engrossed in a magazine as the defendants walked by. Tisi testified that he glanced up from the magazine at the defendants only for a moment, and that he paid no particular attention to them. Finally, he firmly stated that he was certain that he could identify the bank robbers without regard to the courthouse encounter. Accordingly, we hold that Tisi's in-court identification of Harper was not impermissibly tainted by Tisi's encounter with the defendants shortly before his testimony.

## V. IN–COURT IDENTIFICATION OF THURSTON

██ Thurston argues that the government's attorney improperly assisted Lynn McDonough, a teller at the Hallandale Bank, in her in-court identification of Thurston. The following exchange occurred between the government and the witness:

Government: Miss McDonough, before going further, I am going to ask you whether you recognize any of the individuals here in this courtroom that you saw on that day.

Witness: Yes.

Government: Can you tell us who that individual or individuals are that you recognize?

Witness: The man in the blue sweater with the stripes.

Government: I don't see a blue sweater.

Witness: Grey.

Defendant: Judge, I object. That is highly improper. Prejudicial.

Court: Mr. Stern, let her, tell us.

Government: Could you point to us where he was in the courtroom?

Witness: In the first pew with a cross around his neck [Thurston].

Thurston was wearing a grey sweater, while a member of the public, seated in the rear of the courtroom, was wearing a blue knit shirt. Both were black men. In an abundance of caution, the district court instructed the jury to disregard the witness' identification testimony, in part because of the exchange described above, and for another reason not relevant here. We conclude that the government's attorney did not improperly assist the witness in her in-court identification of Thurston.

The district court itself stated that at the time the witness made her identification (1) it was clear that she was looking at Thurston, and (2) she was not looking in the area in which the person wearing the blue shirt was sitting. Further, the government attorney's conduct in this case is unlike that in *United States v. Warf*, 529 F.2d 1170 (5th Cir. 1976), cited to us by Thurston. In *Warf*, before the witness said anything, the government's attorney both (1) pointed at the defense table, at which the defendant was seated, and (2) asked, "Is he [the individual who made the incriminating statements about which the witness testified] over at this table ...." In other words, the government aided the witness' identification "both verbally and by pointing" *before* the witness made the identification. *Id.* at 1171, 1174. In contrast, the government's attorney here did not direct the witness' attention to Thurston, either verbally or by pointing, before the witness made her identification. Having observed the witness, the district court here concluded that she was looking at Thurston at the time she made her identification. Moreover, the witness later testified that she "didn't notice" the person wearing the blue shirt. Under the circumstances of this case, we hold that the government's attorney did not improperly assist the witness' identification of Thurston.

## VI. SUFFICIENCY OF THE EVIDENCE

Thurston contends that the government introduced insufficient evidence to establish his participation in the Hallandale Bank robbery. More specifically, he argues that the government failed to show that during the commission of the robbery, Thurston placed his fingerprints on a savings withdrawal slip, which was found at the scene of the crime. The test that guides our review of the challenge to the sufficiency of the evidence is whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (en banc).[1] We conclude that a reasonable jury could find beyond a reasonable doubt that Thurston participated in the robbery of the bank in question.

The evidence of Thurston's fingerprints on the savings withdrawal slip, found in front of the bank tellers' stalls after the robbery, was the most significant evidence of Thurston's involvement in the robbery in question. Thurston argues that the government did not adequately negate the hypothesis that Thurston placed his fingerprints on that slip at a time other than the time of the robbery, citing *United States v. Lonsdale*, 577 F.2d 923 (5th Cir. 1978), and *United States v. Stephenson*, 474 F.2d 1353 (5th Cir. 1973). We cannot agree. One of the robbers was seen writing on or handling the withdrawal slip just before the robbery occurred.[2] Also, the bank manager testified that because the floor of the bank is swept each evening, it would not be possible for a withdrawal slip to remain on the floor from one day to the next. We note that the robbery in question occurred around 11:30 a. m., evidently only a few hours after the bank opened for business that day. The bank manager further testified that Thurston did not have any account at the bank. In light of this evidence we hold that the government introduced sufficient evidence to establish that Thurston participated in the robbery of the bank in question.

For the reasons discussed above, the convictions are

AFFIRMED.

---

1. Although *Bell* is a post-September 30, 1981, decision of a Unit B en banc court of the former Fifth Circuit, this court "regard[s] the decision as binding precedent . . . ." *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

2. The bank manager testified that just before the robbery, he saw one of the individuals, who later participated in the robbery, leaning over a counter "as if filling out a deposit form." T–497. In addition, in questioning the government's case agent in this case, Thurston's attorney brought out testimony that "one of the alleged robbers ... had touched a deposit slip...." T–724. Finally, one of the bank tellers testified that just before the robbery, the robbers "looked like they were filling out deposits." T–574. All of these individuals were referring to the savings withdrawal slip found at the crime scene.