UNITED STATES of America, Plaintiff-Appellee,

v.

Fred K. BROOKS, Defendant-Appellant.

No. 79–5050.

United States Court of Appeals, Fifth Circuit.

Feb. 11, 1980.

Ed Leinster, Orlando, Fla., for defendant-appellant.

Mark L. Horwitz, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before GODBOLD, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A dealer charged with selling firearms to a person he knew or should have known to be a nonresident in violation of 18 U.S.C. § 922(b)(3) and with falsifying records of the transactions in violation of 18 U.S.C. § 922(m) seeks reversal of his conviction. Finding the attacks on the constitutionality of the charge and the validity of the indictment to be without merit, we consider alleged error in the jury instructions. We hold that, while the charge might have been more complete, it was sufficient to put the real issues to the jury and that, in addition, if it was incorrect, the error was harmless in the light of the evidence and the issues at the trial, and, therefore, we affirm the conviction.

A licensed dealer is forbidden to sell a firearm to a person who the licensee knows or has reasonable cause to believe does not reside in the state in which the licensee's place of business is located. 18 U.S.C. § 922(b)(3). Brooks, a pawn shop operator who was also a licensed firearms dealer doing business in Florida, was convicted on two counts charging him with selling firearms to Robert Chamberland, a person who he knew or should have known was not a resident of that state. He was also convicted on two counts charging that in connection with the same two sales he knowingly made false entries in his records in violation of 18 U.S.C. § 922(m) by showing Michael J. Craw as the transferee to whom the firearms had been sold and delivered.[1]

The government introduced evidence that on November 12, 1975, Chamberland, a Greyhound bus driver who lived in Massachusetts and who worked as an agent or informer for the Bureau of Alcohol, Tobacco and Firearms, went to Brooks' store, asked to see a Bayard pistol and said he wanted to buy it. Brooks requested a driver's license, Chamberland handed him a

Massachusetts license and Brooks stated he could not accept it. Chamberland testified that Brooks suggested he get a friend who had a Florida driver's license. Chamberland testified that he said his tour guide had a Florida license, and that Brooks replied, "Fine. Bring him in and you can get the pistol." Chamberland asked Brooks to hold the pistol for him saying he would be back in three or four days to buy it.

Three days later Chamberland returned with Craw, a resident of Florida, who was, unknown to Brooks, an ATF agent. He introduced Craw to Brooks as a tour guide with the bus company. Chamberland selected a second pistol and said he wanted to buy both this and the Bayard pistol. After Craw produced a Florida driver's license, the necessary forms were completed, with Brooks' assistance, naming Craw as transferee of the firearms. Chamberland counted out the money for the two pistols and paid it to Brooks who gave him change. Brooks made out a receipt naming Craw as purchaser, and put it with the two pistols in a brown paper bag and handed the bag to Chamberland. Craw did not ask to see any firearms, handle any firearms or negotiate any prices. Brooks testified, and all the evidence supports, that he required a Florida driver's license in each of the sales as evidence that the sale was made to a Florida resident.

The gist of the government's case is that the purported sales to Craw and the entries made on the records showing Craw as transferee were sham transactions; the sales were in fact made to Chamberland who was known by Brooks to be a non-resident. The defense set forth in opening argument was that Brooks was a victim of entrapment. After the government had put in its evidence on direct, Brooks' counsel renewed an earlier motion to dismiss the indictment on the ground that the statute was unconstitutionally vague. After this was overruled, Brooks took the stand and testified that he thought the only purpose

---

1. Counts one and three charged sales to Chamberland on November 15, 1977, of two different pistols. Brooks was also charged in six counts with violation of the statute on other occasions. He was found not guilty of those charges.

of the gun control law was to make it possible to trace the gun to the dealer who sold it. Brooks also testified that he did not always make sure that the person who produced a driver's license took physical possession of the gun or that the Florida resident actually paid for the gun, that some people buy guns as gifts for someone else and that it's not uncommon for one person to pay for another person's gun.

After both sides had rested, Brooks' counsel requested that the judge give the same charge concerning identification of the real purchaser of a firearm that another judge had given in the previously tried case of *United States v. Scannapieco,* 611 F.2d 619 (5th Cir. 1979) decided by us this date. The trial judge refused, but gave an abbreviated charge set forth below. In the charge conference, Brooks' counsel said, however, after discussing the evidence, "That's really my entire defense, is that it's entrapment. You have no predisposition to commit the crime when you don't even realize there is a crime being committed." He requested an entrapment charge, saying, "Obviously I've got nothing to argue without the entrapment charge." The closing argument was not transcribed, so we do not have before us what was actually said to the jury.

Brooks asks us to hold that § 922(b)(3) is unconstitutional (and therefore § 922(m) is unconstitutional as well), because it does not give a dealer fair notice that his contemplated conduct is forbidden by the statute. *See United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). His argument seems to be that, as applied to him, the statute makes a dealer responsible if an individual produces information that purports to identify him as a resident and forms are completed showing that person as the transferee unless the dealer insures that the person is the "ultimate recipient" of the gun, and that it does not give fair notice of this application.

■ The statute makes it unlawful for a dealer to "sell or deliver . . . any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in the State . . . ."

Because the phrases "sell or deliver" have a well settled common law meaning, *Connally v. General Const. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926), they convey sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Jordan v. DeGeorge,* 341 U.S. 223, 231–32, 71 S.Ct. 703, 708, 95 L.Ed. 886, 892 (1951).

■ The statute is equally clear with respect to the requisite mental state of the seller; it reaches only one who "knows or has reasonable cause to believe [that the purchaser] does not reside in the state." The law need not spell out the means that a dealer may employ to negate any inference that he either knows or has reason to know that the person is a nonresident. Indeed, disproof is unnecessary. It is the burden of the government to prove beyond reasonable doubt the state of mind that is an essential element of the case.

■ Nor is the statute unconstitutionally void as applied to Brooks. He was not charged with selling to Craw knowing or having reason to know that Craw was acting as agent for Chamberland or would retransfer the gun to Chamberland. He was charged with selling to Chamberland, a person he knew to be a nonresident, and the jury was instructed on this, i. e., in terms of a sham transaction with Craw. The consequence of a bona fide sale to A, who is acting as agent for B, an unrevealed principal, or who intends to later give or sell the gun to C, a nonresident, is not presented by this case.

■ Brooks next asserts that the sales were exempt under a statutory exception for "the transportation, shipment, receipt, or importation of any firearm or ammunition . . . sold or shipped to . . . the United States or any department or agency thereof . . . ." 18 U.S.C. § 925(a)(1). This subsection does not exempt any sale or delivery of firearms; it expressly covers only the "transportation, shipment, receipt, or importation" of firearms "for the use of the United States." No greater reliance can be placed on Sub-

section 45 of the Firearms Regulation Book, published by the Treasury Department, which purports to exempt sales of firearms to police officers. If such a sale is indeed exempt, the seller must have knowledge that the buyer is a police officer and must secure a signed statement from an official of the agency for which the buyer works stating that the firearm is to be used in the buyer's official duties. Brooks did not meet these requirements.

We turn now to the alleged error in the jury charges. The key issue in the case as framed to the court was whether Brooks was entrapped. Counsel raised as a secondary issue whether Brooks knowingly sold the guns to Chamberland, who had negotiated for them and to whom they were delivered, or whether he thought he was making the sale to Craw who produced the Florida driver's license, was shown on the records of the transferee and who, Brooks contended, was the real purchaser buying the guns for a friend.

■ No error is alleged concerning the entrapment defense. In view of this it is doubtful that we should even consider the alternative defense. For there is, as we have recently said, "a veritable legion of opinion in this Circuit" that a defendant may not simultaneously plead entrapment and deny committing the acts on which the prosecution is predicated. *United States v. Greenfield,* 554 F.2d 179, 181 (5 Cir. 1977), *cert. denied* 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978), and cases cited therein. The rationale for the rule is based on the inherent inconsistency of saying at the same time, "I didn't do it," and "the government tricked or seduced me into doing it." The continued cogency of this position has been debated, *see United States v. Demma,* 523 F.2d 981 (9th Cir. 1975) (en banc), and *United States v. Greenfield, supra,* but as a panel we are bound by the law of the circuit.

Nonetheless, in view of the fact that review of this decision might be sought, we discuss the validity of the appeal as related to the remaining issues.

The trial court charged over objection:

For purposes of these Instructions, the purchaser of a firearm is the person who actually pays for the firearm and to whom the licensed firearms dealer knowingly transfers possession and control of the firearm.

The court also instructed the jury on the meaning of the word "knowingly" and on entrapment. Obviously, the instruction concerning who is the purchaser of a firearm affected both the sale and false entry counts. However, neither in his stated defense nor in his testimony did Brooks deny the substance of any of the testimony of Chamberland and Craw. Instead he asserted his notion of the purpose of the law, to facilitate gun tracing and his claim that it was not unusual for one person to buy a firearm for someone else. To him the person who produced a resident license was ipso facto the buyer.

There was no substantial dispute in the evidence about the facts leading up to the delivery of the guns. Although Brooks testified that he didn't remember some details and his version of others was slightly different from that given by Chamberland and Craw, all of the testimony is substantially the same; Chamberland negotiated for the weapons, paid for them, received possession of them and presented himself as the person who desired to purchase them. Under other circumstances whether, when two people were present, the sale was made to one or the other might depend upon a number of surrounding circumstances and not only upon who put the cash on the counter or picked up the bag containing the guns. The instruction given in *United States v. Scannapieco,* 611 F.2d 619 (5th Cir. 1979) was obviously more complete in this respect. However, in the present case Brooks' defense was not that Craw was the real buyer nor that he believed Craw to be the real buyer. He contends that he was entrapped, and, alternatively that he had no intention to violate the law because he did what was customary and what was, in his opinion, permissible. Apparently accepting this defense as to the other transactions for which Brooks was indicted, the jury acquitted him of the charges based on them.

Both sides overstate the issues that are central in considering whether the instruction was erroneous. The government urges that, unless the instruction as given is approved, dealers may make sham sales with impunity. Brooks urges that affirmance will require every dealer to determine in every sale to a resident transferee that the transferee does not intend to re-transfer the firearm to a nonresident. The quick answer to both arguments is that the statute is violated by a sham sale made to a resident when the transaction is really with a nonresident, and it is for the jury to decide, on all the relevant evidence and with proper instructions, whether such a charade occurred or whether there was a bona fide sale to a resident.

However in the present case only a few issues were disputed. It is not necessary for the judge to charge the jury on issues not presented by the facts, *United States v. Malatesta*, 583 F.2d 748, 759 (5th Cir. 1978), rehearing en banc, 590 F.2d 1379, *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); *United States v. Boswell*, 565 F.2d 1338, 1343 (5th Cir.), *cert. denied*, 439 U.S. 819, 99 S.Ct. 81, 58 L.Ed.2d 110 (1978). Moreover, in reviewing the adequacy of an instruction, the appellate court must view the charge in its entirety. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *United States v. Green*, 433 F.2d 946 (5th Cir. 1970). The instruction here covered fully the real issue raised in the case. Even if it did not, the evidence as to the Chamberland-Craw charge was overwhelming. *See United States v. Vines*, 580 F.2d 850 (5th Cir.), *cert. denied*, 439 U.S. 991, 99 S.Ct. 591, 58 L.Ed.2d 665 (1978); *Washington v. Maggio*, 540 F.2d 1256 (5th Cir. 1976).

For these reasons, the conviction is AFFIRMED.