**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mark Douglas FLICK,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Patrick GALLAGHER,
Defendant-Appellant.**

**Nos. 83–1070, 83–1071.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 13, 1983.

Decided Sept. 23, 1983.

Sherry Herrgott, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Victor Aronow, Phoenix, Ariz., for Flick.

Donald E. Wolfram, Phoenix, Ariz., for Gallagher.

Before TRASK, TANG, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Appellants Mark Flick and William Gallagher appeal from orders of the district court denying their pretrial motions to dismiss the indictment returned against them in *United States v. Cantelme.* They claim that the *Cantelme* indictment, from which these appeals are taken, is barred by the double jeopardy clause of the fifth amendment. We have jurisdiction of these interlocutory appeals under 28 U.S.C. § 1291 (1976). *See Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). We reverse the district court orders and remand for a further hearing.

### I.

On November 17, 1982, a 37-count indictment was returned in *United States v. Cantelme* charging appellants and nine other defendants as follows: Count One charges a conspiracy between January 1, 1980, and the date of the indictment to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) (1976) and 846. Count One further charges that "[i]t was part of the conspiracy to establish a network for distributing the cocaine through individuals who are or were employed by the City of Phoenix Fire Department as firefighters or paramedics." Counts Two through Thirty Six charge the named co-conspirators with overt acts in furtherance of the conspiracy. The overt acts charged consist of distribution, possession with intent to distribute, and aiding and abetting possession with intent to distribute various quantities of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1976) and 18 U.S.C. § 2 (1976).[1]

Prior to this indictment, appellants were among 106 persons against whom an indictment had been returned in *United States v. Cunningham.* The *Cunningham* indictment charged a large-scale conspiracy between January 1, 1973, and July 1, 1982, to possess with intent to distribute and to distribute cocaine. The indictment charged that the conspirators obtained large quantities of cocaine from Florida and California and redistributed it to co-conspirators in Arizona, Iowa, and Kansas. The appellants, togeth-

1. Count 37 charges Frank Zielezinski with a perjured statement in the course of his testimony before the grand jury investigating this matter, in violation of 18 U.S.C. § 1623 (1976).

er with Timothy Gallagher, William Gallagher's brother, were among those named as retail customers in the Phoenix area who purchased cocaine for redistribution. Count 54 charged Flick, aided and abetted by William Gallagher, with possession with intent to distribute cocaine. Flick was acquitted on both the conspiracy and substantive counts. Gallagher was acquitted on the substantive count and convicted on the conspiracy count.

On March 23, 1983, Flick filed a motion to dismiss the *Cantelme* indictment, claiming that it was barred by the double jeopardy clause of the fifth amendment. Gallagher filed a motion to dismiss on the same ground on March 25, 1983. Appellants contend that the conspiracy charged in the *Cantelme* indictment is a part of the conspiracy previously charged and tried under the *Cunningham* indictment.

Following a hearing, the district court denied the motions to dismiss. Appellants timely filed notices of appeal and were ordered severed from trial with the remaining defendants in *Cantelme.*

## II.

■ The double jeopardy clause of the fifth amendment bars multiple prosecutions for a single conspiracy. *United States v. Bendis,* 681 F.2d 561, 563 (9th Cir.1981) (*citing Braverman v. United States,* 317 U.S. 49, 52–53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942)), *cert. denied,* —— U.S. ——, 103 S.Ct. 306, 74 L.Ed.2d 286 (1982). To sustain a claim of double jeopardy, it must be shown that the two conspiracies are in law and in fact the same offense. *United States v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966); *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed.2d 489 (1911); *Bendis,* 681 F.2d at 563; *United States v. Burkett,* 612 F.2d 449, 451 (9th Cir.1979), *cert. denied, sub nom.* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 853 (1980). Both the *Cantelme* and *Cunningham* indictments charge conspiracies under 21 U.S.C. § 846 (1976).

■ Ordinarily, the constitutional standard used to determine the validity of a double jeopardy claim is the *Blockburger* "same evidence" test. *See Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). We have previously explained, however, that mechanical application of the *Blockburger* test is sometimes inadequate to test a double jeopardy claim lodged against two charges of conspiracy under the same statute. *Bendis,* 681 F.2d at 564–65. Artful tailoring of the overt acts charged in the substantive counts or of the objects of the conspiracy might satisfy *Blockburger* while at the same time permitting the artificial subdivision of one conspiracy to support multiple charges of violations of a single statute. *Id.* at 565.

Accordingly, this circuit has adopted a factor analysis to determine whether two conspiracies charged under the same statute constitute the same offense. *Id.* *United States v. Mayo,* 646 F.2d 369, 372 (9th Cir.), *cert. denied sub nom. Dondich v. United States,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 115 (1981); *Arnold v. United States,* 336 F.2d 347, 350 (9th Cir.1964), *cert. denied,* 380 U.S. 982, 85 S.Ct. 1348, 14 L.Ed.2d 275 (1965).

> We compare[ ] the differences in the periods of time covered by the alleged conspiracies, the places where the conspiracies were alleged to occur, the persons charged as co-conspirators, the overt acts alleged to have been committed, and the statutes alleged to have been violated.

*Mayo,* 646 F.2d at 372.

■ The obligation to raise a double jeopardy claim before the end of trial always rests with the defendant. *United States v. Hill,* 473 F.2d 759, 763 (9th Cir. 1972); *Haddad v. United States,* 349 F.2d 511, 513–14 (9th Cir.), *cert. denied,* 382 U.S. 896, 86 S.Ct. 193, 15 L.Ed.2d 153 (1965). When the claim is raised prior to the commencement of the second trial, the allocation of the burden of proving the identity of, or the distinction between, the conspiracies charged is critical. The government, of course, controls the degree of precision with which the conspiracy charged in the second

indictment is described. *United States v. Inmon,* 568 F.2d 326, 332 (3d Cir.1977) (cited with approval in *Bendis,* 681 F.2d at 564). Moreover, at this juncture, the government's anticipation of and access to the proof on which it intends to rely during the second trial is superior to that of the defendant. *Bendis,* 681 F.2d at 564. Accordingly, we have held that

> once the defendant makes a non-frivolous showing of former jeopardy, the government must tender to the court evidence indicating that separate conspiracies are charged. While this appears more properly characterized as a burden to go forward with the evidence, it may in practical effect amount to a burden to persuade the court.

*Id.*

Appellants argued before the district court and again on appeal that the government simply bifurcated a single conspiracy in order to permit multiple prosecutions. The first conspiracy, *Cunningham,* charged distribution of cocaine in a number of states, including Arizona. The indictment charged that certain co-conspirators obtained large quantities of cocaine "for redistribution to other co-conspirators for further distribution." It named a number of co-conspirators, including Flick and Gallagher, as retail customers in Phoenix who purchased cocaine for redistribution. Appellants contend that, in the first case, the government established a conspiratorial chain that included William Gallagher, his brother, Timothy, and Michael George, at that time all members of the Phoenix fire department. They argue, in essence, that the government simply chose not to pursue completely the connection between the *Cunningham* conspiracy and other members of the fire department, despite the fact that the indictment alleged that the retail customers had acquired the cocaine for "further distribution." Together with the conspiratorial chain established in *Cunningham,* appellants read the overt acts charged in *Cantelme* and the government's bill of particulars filed therein to complete the chain of distribution to various individuals within the fire department.

Appellants rely on the factor analysis to support the identity of the conspiracies charged. The *Cunningham* indictment charged a conspiracy from January 1, 1973 to July 1, 1982, while the *Cantelme* conspiracy was charged from January 1, 1980 to November 17, 1982. Thus, there is a substantial time overlap of the two conspiracies. Moreover, appellants note that all the overt acts charged against them in the second conspiracy, in June 1982, fell within the dates charged in the first.

Appellants argue that the locus of the *Cantelme* conspiracy was in Phoenix, Arizona, as was the locus of their part of the *Cunningham* conspiracy. They also assert an overlap in co-conspirators in the two indictments. *Cunningham* named Flick and both Gallaghers among the 106 persons indicted, and named Michael George as an individual with whom the conspirators had dealt. *Cantelme* charged each of these individuals as co-conspirators, with the exception of Timothy Gallagher, who was named as an unindicted co-conspirator.

Appellants acknowledge that none of the overt acts charged in the two indictments is the same, but suggest that this is precisely the kind of artful crafting the government must employ in order to avoid a blatant violation of the double jeopardy clause.

Finally, appellants point to the statutory identity of the charges. They urge that the established chain of distribution shows a single criminal enterprise.

The government essentially disputes two parts of appellants' argument. First, it argues that the chain of distribution on which appellants rely has not been established. It asserts that there were additional, albeit unknown, sources of cocaine for the conspiracy charged in *Cantelme.* Second, even if the claimed chain of distribution exists, the government contends that the purposes of the two conspiracies differ. They characterize *Cunningham* as a large-scale, vertical-line conspiracy for profit, and distinguish *Cantelme* as a "starfish," in which small quantities of cocaine passed back and

forth between members of the fire department for social use rather than profit.

After hearing argument, the district court denied appellants' motions to suppress on the ground that "the record [was not] adequately complete to show that they are being placed in . . . double jeopardy."

█ The appellants argue that the two conspiracies charged substantially overlapped in time, shared a common location, and were accomplished with the same chain of distribution. Under the factor analysis, their claim of double jeopardy was non-frivolous. Because the second trial had not yet commenced, the government had the practical burden of persuading the court that the conspiracies charged were not the same. *Bendis*, 681 F.2d at 564. Here, it was simply determined that the record was not sufficiently complete to show that the appellants had been placed in double jeopardy. *Bendis* requires more.

The record on appeal is extremely sparse. Without supplementing that record, we are not in a position to make a final judgment as to what result the application of *Bendis* would yield. Much of the information before us regarding critical factual issues comes from the conflicting representations of counsel at oral argument. Moreover, it is far from clear how much additional information would be available even if the record before us were to be supplemented. We note that the timing of appellants' motions below may have been such as to make it difficult for the district judge to receive and consider all the requisite factual information.

█ We also note, however, that since the time of the district court's initial decision a trial of the other *Cantelme* defendants has been held. Thus, the district court should presently have available to it far more in the way of concrete facts regarding the acts alleged in the *Cantelme* indictment than it had at the time of its initial ruling. Accordingly, we reverse and remand so that the district court may now fully evaluate appellants' double jeopardy claims in accordance with *Bendis*. The district court

should consider the appropriateness of holding an evidentiary hearing in order to resolve any disputed facts material to resolution of those claims.

VACATED AND REMANDED.