**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Timothy Rand SMITH,**
**Defendant-Appellant.**

No. 84–3277.

United States Court of Appeals,
Eleventh Circuit.

April 15, 1985.

Rehearing and Rehearing En Banc Denied
May 20, 1985.

Clyde M. Taylor, Jr., Tallahassee, Fla., for defendant-appellant.

David McGee, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before JOHNSON and CLARK, Circuit Judges, and LYNNE *, District Judge.

JOHNSON, Circuit Judge:

A jury in the Northern District of Florida convicted Timothy Rand Smith of conspiracy to distribute cocaine, distribution of cocaine and four counts of using a communications facility to commit a felony. He was also convicted on related charges in the Western District of North Carolina. This is the appeal from the Florida trial.

The arrest in this case grew out of an FBI sting operation in which agents in Tallahassee, Florida, posed as money launderers and providers of other financial services in order to apprehend drug smugglers. Agent Pelligrino, who participated in the operation, met Smith in July of 1982. After Pelligrino had provided a number of financial services to Smith such as purchasing assets under a corporate name and filling out fraudulent tax returns, Smith asked if he was interested in buying a large quantity of cocaine. Pelligrino introduced Smith to Agent Howard Glavin, posing as a large-scale buyer of cocaine.

Smith and Glavin met twice in Pelligrino's office. At the first meeting Smith gave Glavin a 1.2 gram sample of the cocaine. The two men finalized their negotiations during the second meeting: Glavin agreed to purchase 10 kilograms of cocaine for $410,000 followed by 60 kilograms for $2,400,000. Smith mentioned that his source of cocaine, a Colombian family with whom he had dealt for several years, had "fronted" the cocaine (that is, they had given him the cocaine with the understanding that they would be paid from the proceeds of any eventual sale by Smith). He planned to deliver their share of the money to a Colombian man who served as their agent in Florida. Smith also told Glavin that he kept the cocaine in a "stash house" managed by an unnamed man.

Smith insisted that the exchange take place in Charlotte, North Carolina. The initial transfer of 10 kilograms took place as expected on September 13, 1983, in North Carolina and federal agents arrested Smith after the sale. He was indicted by grand juries in both North Carolina and Florida.

Before the trial in Florida, Smith moved for a continuance in order to develop evidence supporting his defense of entrapment or government overreaching. The court granted a one month continuance. At the end of that month, Smith moved for another continuance on the same grounds and for dismissal of the charges on double jeopardy grounds, claiming that the North Carolina and Florida trials involved the same offenses. The district court denied both motions. During the trial, the government asked that Smith's attorney be prevented from arguing inconsistent theories to the jury, namely, that Smith did not participate in any conspiracy and that Smith was entrapped. The court ruled that Smith would have to choose one defense and abandon the other. Afterwards, Smith moved for a severance of the conspiracy count from the other five counts, a motion

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

denied by the court. The jury ultimately returned guilty verdicts on all six counts.

Smith challenges his conviction on four grounds: (1) one of the charges was barred on double jeopardy grounds, (2) the court abused its discretion in failing to grant the second motion for continuance, (3) there was insufficient evidence of a conspiracy to support a conviction, and (4) the court erred in forcing Smith's attorney to choose between competing theories in his arguments to the jury.

## I. Double Jeopardy

■ In the Florida case, the government charged Smith with distribution of 1.2 grams of cocaine; it charged him with distribution of 10 kilograms of cocaine in the North Carolina case. Smith claims that the North Carolina case, tried several days before the Florida case, created a double jeopardy bar that should have prevented the government from trying him for distribution in Florida.[1]

■ Smith attempts to support his double jeopardy claim first by showing that each of the two trials turned on similar evidence and arguing that overlapping evidence indicates that two offenses are really the same for double jeopardy purposes under *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) and *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). *Blockburger*, however, merely states that two offenses are the same when the elements of one crime include all the elements of another crime. The fact that the same evidence appears in two different trials has some bearing on a double jeopar-

dy claim,[2] but in this case it is not enough to create a double jeopardy problem. The same evidence might be used to prove several distinct elements of different crimes. *See United States v. Phillips*, 664 F.2d 971, 1006 (5th Cir. Unit B 1981), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

■ Smith argues secondly that the distribution of the 1.2 gram sample and the distribution of the 10 kilograms were not two distinct criminal acts, but part of a single transaction. Congressional intent determines in large part whether the government may seek separate punishments for the distribution of a shipment of cocaine and a sample of that shipment, each distribution carried out pursuant to the same agreement. *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981).

■ The statute in question, 21 U.S.C.A. § 841(a)(1), prohibits any person from distributing a controlled substance. Distribution is defined elsewhere in the statute as a delivery or an "actual, constructive, or attempted transfer of a controlled substance." 21 U.S.C.A. §§ 802(8), (11). The language plainly indicates that the government may prosecute a person for each separate act of distribution even if one distribution facilitates the next one. *United States v. McDonald*, 692 F.2d 376 (5th Cir. 1982), *cert. denied*, 460 U.S. 1073, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983). Of course, this court interprets statutes under the presumption that Congress would not allow

---

1. Smith has also alleged in his brief and in oral argument that the North Carolina case barred the later prosecution for conspiracy to distribute cocaine (Count I of the Florida indictment) and four counts of use of a communications facility to commit a felony (Counts II through VI). Obviously, the elements of each of these offenses differ from the elements of the North Carolina offense, *United States v. Ocanas*, 628 F.2d 353 (5th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981), and prosecution of these charges did not place Smith in double jeopardy.

2. The Double Jeopardy Clause also encompasses principles of collateral estoppel, so that if the government were to try to prove the same factual issue in two trials, an adverse decision in the first trial would prevent relitigation of that same issue if it was critical to the first prosecution. *Brown v. Ohio, supra*, 432 U.S. at 166–67 n. 6, 97 S.Ct. at 2225–26 n. 6; *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Since the North Carolina jury did not determine any issues adverse to the government, collateral estoppel does not apply.

the government to manipulate the charges against a person so as to obtain multiple punishments for what is in essence the same offense. *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980). Yet the two distributions here took place on separate days and were, under any normal meaning of the word, separate "acts." Since the statutory offense here consists of a distinct physical act rather than a state of mind, *cf. United States v. Flick,* 716 F.2d 735 (9th Cir.1983), a single charge is not susceptible to improper subdivision.

 Smith contends, however, that Congress could not have meant to punish separately the various distributions involved in a single drug transaction because allowing two convictions instead of one might make him prematurely eligible for severe sentencing under the special offender provisions of the statute, 21 U.S.C.A. § 849.[3] But if Congress had meant to exempt from the special offender provisions persons such as Smith who make several distributions during the same overall transaction, it could have refined the definition of the offense or narrowed the definition of a special offender or placed some reference to the problem in the legislative history. It would not be unreasonable to treat Smith as a special offender. Under these circumstances, silence demonstrates that Congress understood the clear relationship between these two sections of the same subchapter. *See Albernaz v. United States,* 450 U.S. at 341–42, 101 S.Ct. at 1143–44. The government acted consistently with the intent of Congress in bringing these two distribution charges against Smith.

**3.** The two offenses that are sufficient to make a defendant eligible for treatment as a special offender must be "committed on occasions different from one another." We do not decide today whether Smith is actually eligible for treatment as a special offender after this conviction.

**4.** Smith also claims that the district court's denial of his motion was erroneous as a matter of law on procedural grounds because the court

## II. Motion for Continuance

 The trial court granted the defendant's first motion for continuance on January 13, 1984, giving him one extra month in which to gather evidence to support his theory of governmental misconduct. The court denied the second motion, which was based on essentially the same grounds as the first motion, one month later. Smith claims that this was reversible error. In order to obtain relief on the basis of a denial of a motion for continuance, a defendant must show that the denial was an abuse of discretion and that it produced specific substantial prejudice. *United States v. Wuagneux,* 683 F.2d 1343, 1355–56 (11th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983).

 Smith alleged in the district court that the FBI had committed criminal acts and had engaged in general misconduct that might have been serious enough, if true, to have constituted a violation of due process. The defendant, however, never uncovered evidence to substantiate the allegations. He had five months from the time of arrest to the time of trial, including the one-month continuance granted in January. Yet he could not explain to the court in February why his future discovery efforts would be any more successful than his past efforts had been. The specific information he sought and his proposed discovery both appeared to be quite speculative; there was no substantial reason to believe that further discovery would have produced the necessary evidence. Hence, the district court did not abuse its discretion in refusing to grant the second motion for continuance.[4]

did not consider each of the four factors listed in 18 U.S.C.A. § 3161(h)(8)(B). This statute does not, however, impose on trial courts a duty to consider the four factors whenever it considers a motion for continuance. It states only that any continuance may be excluded from the days allowed under the Speedy Trial Act whenever the court makes findings concerning the four statutory factors. The Speedy Trial Act is not at issue in this case.

### III. Sufficiency of Conspiracy Evidence

Smith was convicted of conspiracy to distribute cocaine. He points out that a defendant may not conspire with government agents, *United States v. Tombrello*, 666 F.2d 485, 490 n. 3 (11th Cir.), *cert. denied*, 456 U.S. 994, 102 S.Ct. 2279, 73 L.Ed.2d 1291 (1982), and then makes two claims: first, that the grand jury did not have any competent evidence upon which to base an indictment for conspiracy and, second, that the evidence at trial of a conspiracy with persons other than agents was insufficient to support a guilty verdict.

The government mischaracterizes the defendant's first argument as one alleging a variance between the terms of the indictment and the evidence presented at trial. Smith alleges that the grand jury had no competent evidence upon which to base an indictment for conspiracy; the claim goes to the sufficiency of the evidence before the grand jury rather than any variance between the indictment and the proof at trial.

There is considerable doubt whether a defendant can challenge the sufficiency of evidence relied upon by a properly constituted and unbiased grand jury. *See Costello v. United States*, 350 U.S. 359, 363–64, 76 S.Ct. 406, 408–09, 100 L.Ed. 397 (1956). Even if this court could entertain such a challenge, it would not succeed in this case. The videotapes (depicting conversations between Smith and FBI agents) shown to the grand jury contained several references to persons other than Smith or the agents. Those other persons, including a family that had provided Smith with cocaine and a man entrusted to watch and manage his "stash house," could have been co-conspirators. Hence, a reasonable grand juror could have believed that the government had probable cause to bring charges against Smith.

Evidence at trial can support a guilty verdict as long as it justifies a reasonable juror in believing that the defendant is guilty beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). The government presented such evidence of a conspiracy with non-agents in this case. Among other things, the evidence demonstrated that a family in Colombia had fronted the cocaine to Smith. While Smith argues that the Colombian family had no knowledge of his sale to Glavin, they knew that he was going to sell the cocaine to someone and pay them their share of the proceeds. They had no need to know further details of the sale; they were participants nonetheless. The agreement existed during the time period covered by the indictment. Thus, the evidence adequately supported the guilty verdict rendered by the jury. The government also alleges that Smith conspired with a man in Florida serving as an agent for the Colombian family, the manager of his stash house, and a pilot named Wayne Richard. Because the evidence regarding the Colombian family can sustain the conspiracy charge, we do not address the sufficiency of the evidence regarding these other possible conspirators.

### IV. Limitation of Closing Argument

The government made a motion at the close of the defendant's case to prevent his attorney from making inconsistent arguments to the jury regarding the conspiracy charge. The trial court granted the motion, ruling that Smith's attorney could argue either that the government had illegally induced him to knowingly participate in an illegal conspiracy or that there was no conspiracy with persons other than government agents. The court also denied Smith's subsequent motion to sever the conspiracy charge from the other five charges. Smith claims that each of these rulings was erroneous.

Binding precedent in this Circuit states that a defendant who wishes to rely upon an entrapment defense may not rely upon defenses that conflict with the claim of entrapment. Although defendants may assert inconsistent defenses in other contexts, the unusual nature of the entrap-

ment defense, focusing on the state of mind of the defendant prior to commission of the defense, *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), justifies this requirement. The doctrine facilitates the truth-finding function of a criminal trial and saves the prosecutor from presenting essentially two cases against the defendant, one relating to the offense and the other relating to predisposition prior to the offense. The wisdom or consistency of that doctrine is a matter beyond the reach of this panel. *Cf. United States v. Henry*, 749 F.2d 203 (5th Cir. 1984) (en banc); *United States v. Demma*, 523 F.2d 981 (9th Cir.1975) (en banc).

■ The cases setting forth this principle also establish for this Court a workable means of determining the precise degree of inconsistency between defenses that the law will tolerate. The consistency of the defenses presented by a defendant depends largely on what part of the prosecution's case he or she admits is true. While this Court has often held that a defendant asserting entrapment must admit all the criminal acts upon which the prosecution builds its case, *United States v. Nicoll*, 664 F.2d 1308 (5th Cir. Unit B), *cert. denied*, 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982); *United States v. Crossman*, 663 F.2d 607, 610 (5th Cir.1981), *cert. denied*, 456 U.S. 977, 102 S.Ct. 2243, 72 L.Ed.2d 851 (1982); *United States v. Brooks*, 611 F.2d 614, 618 (5th Cir.1980); *United States v. Williamson*, 482 F.2d 508, 515 (5th Cir.1973); *Government of the Canal Zone v. Risbrook*, 454 F.2d 725 (5th Cir.1972); *McCarty v. United States*, 379 F.2d 285 (5th Cir.), *cert. denied*, 389 U.S. 929, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967); *Beatty v. United States*, 377 F.2d 181, 186 (5th Cir.), *rev'd on other grounds*, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967), there are several recognized exceptions to this rule.

The first, not applicable in this case, occurs when the government's case-in-chief injects substantial evidence of entrapment into the case. In that situation a defendant may assert his or her own defense and still ask that the jury consider the possibility of entrapment as raised by the government itself. The availability of both defenses does not result from inconsistent statements made by the defendant and does not unduly burden the government, because the prosecution brings the issue into the case. *United States v. Haimowitz*, 725 F.2d 1561 (11th Cir.1984); *United States v. Morrow*, 537 F.2d 120, 138 (5th Cir.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977); *Sears v. United States*, 343 F.2d 139 (5th Cir.1965); *cf. United States v. Groessel*, 440 F.2d 602 (5th Cir.), *cert. denied*, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 712 (1971).

■ The second exception, originating in *Henderson v. United States*, 237 F.2d 169 (5th Cir.1956), provides that a defendant may assert defenses that might appear to conflict with one another, so long as they do not "necessarily disprove" one another. *Id.* at 173. In other words, a defendant may assert entrapment along with another defense so long as a jury could consistently find that he or she is entitled to either defense without changing its view of the facts. In the *Henderson* case a defendant charged with conspiracy denied any participation in the conspiracy while claiming at the same time that he had been entrapped into committing the admitted overt acts. *Id.* at 173 ("the defendant could admit operating the illicit still, deny being a party to the conspiracy charged, and still defend on the ground that *such overt acts as he did commit* were done as a result of entrapment.") (emphasis supplied). Henderson was innocent either because he did not conspire or because he was entrapped into committing the overt acts. Both defenses could exist under the same set of facts.[5]

---

5. Similarly, in *United States v. Smith*, 407 F.2d 202 (5th Cir.1969), *cert. denied*, 397 U.S. 949, 90 S.Ct. 972, 25 L.Ed.2d 131 (1970), a defendant charged with selling narcotics without demand-

ing a written order from the purchaser in violation of 21 U.S.C.A. § 828, admitted participation in the transaction but denied criminal liability by claiming that he had purchased the narcotics

At least one case from this Circuit has gone beyond the bounds of the exception established in *Henderson*.[6] In *United States v. Greenfield*, 554 F.2d 179, 182–83 (5th Cir.1977), *cert. denied*, 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978), a pharmacist charged with dispensing controlled substances for improper purposes admitted that he had dispensed the drugs but denied any criminal intent. He further claimed that any improper intent that he may have had was due to entrapment on the part of the purchaser, a government agent. The court ruled that those defenses were not "impermissibly inconsistent" because the pharmacist had admitted the criminal acts and had only denied criminal intent. The court did not explain why proof of one of these defenses did not necessarily disprove the other but observed instead that the issue of criminal intent was a factual dispute for the jury to resolve.

The *Greenfield* case has been singled out as a source of conflict in the law in this context. *United States v. Hill*, 626 F.2d 1301, 1303 n. 2 (5th Cir.1980). *See also McCarty v. United States*, 379 F.2d 285 (5th Cir.), *cert. denied*, 389 U.S. 929, 88 S.Ct. 291, 19 L.Ed.2d 281 (1967) (defendant denied knowing that package he carried contained marijuana); *United States v. Nicoll*, 664 F.2d 1308 (5th Cir. Unit B), *cert. denied*, 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982) (denial of intent to distribute cocaine); *United States v. Brooks*, 611 F.2d 614 (5th Cir.1980) (denial of intent to sell firearms to nonresident of state). We need not, however, resolve these conflicting precedents or test the logic of the *Greenfield* exception because the district court's ruling in this case is consistent with both *Greenfield* and *Henderson*.

One of Smith's defenses in this case necessarily disproves the other. He claims first that he did not conspire with anyone other than the agents, Glavin and Pelligrino. On the other hand, he claims that Glavin and Pelligrino induced him to conspire with others. It is difficult to imagine two defenses more inconsistent than these two relied upon by Smith. If the jury were to believe that Smith did not conspire with non-agents, it could not simultaneously find that agents entrapped him into conspiring with others. In addition, since the alleged offense in this case, conspiracy, looks to a state of mind, agreement, as its *actus reus*, Smith has not even admitted the criminal act as alleged by the government, much less the criminal intent. We therefore hold that the trial court correctly forced Smith to choose between these two defenses.

Smith also argues that the trial court, rather than forcing him to abandon one of his defenses, should have granted his motion to sever the conspiracy count from the other five charges. A severance of trial on the conspiracy charge from trial on the other charges would not, however, have benefited Smith in any way. Smith defended against all six charges on the ground of entrapment and only denied committing the conspiracy. When forced to choose between defenses, he retained the entrapment defense and abandoned the other. His defense on the charges other than conspiracy was unimpaired by the choice. Moreover, the same choice between inconsistent defenses would have been neces-

---

as an agent for the final purchaser and therefore was not a seller subject to the statute. Purchasing as an agent for another was a defense under that statute regardless of the intent of the agent. Hence, Smith was allowed to assert entrapment along with his agency defense because neither defense disproved the other.

In subsequent cases, the exception was further refined. Defendants charged with conspiracy could assert entrapment as to the conspiracy only when they admitted to *culpable* acts, presumably because one may not be entrapped into committing a harmless act. *United States*

v. *O'Leary*, 529 F.2d 1202 (5th Cir.1976); *United States v. Newcomb*, 488 F.2d 190 (5th Cir.), *cert. denied*, 417 U.S. 931, 94 S.Ct. 2642, 41 L.Ed.2d 234 (1974).

**6.** In *United States v. Harrell*, 436 F.2d 606 (5th Cir.1970), the defendant denied any participation in a conspiracy. It is not clear whether the defendant claimed entrapment as to the overt acts or the conspiracy. If the latter was the case then the court allowed that defendant to assert two defenses even though one necessarily disproved the other.

sary at a separate trial for conspiracy. The trial court correctly denied Smith's motion to sever.

Accordingly, the judgment of the district court is AFFIRMED.

CLARK, Circuit Judge, dissenting:

I respectfully dissent as to appellant's double jeopardy claim. It is my belief that the government purposely bifurcated a single transaction to create multiple crimes and thus, multiple punishments. In the North Carolina case, appellant was tried for possession of cocaine with intent to distribute and distribution of cocaine arising out of the September 13, 1983 delivery of cocaine in North Carolina. In that trial the government introduced testimony and accompanying exhibits concerning a prior delivery of a cocaine sample that occurred in Tallahassee, Florida on August 25, 1983. It was this delivery of the sample that made up the offense for which the appellant was tried and convicted in Florida.[1] In the North Carolina trial, appellant's counsel objected to the introduction of this evidence on a variety of grounds.[2] The North Carolina trial court in rejecting these arguments ruled that the delivery of the sample of cocaine on August 25 was in actuality part of the "res gestae" of the September 13, 1983 North Carolina transaction. The court's actual words were:

> I think that all this is part of the same transaction, whichever theory the Government is going to go on as to the two counts involved, the election to proceed with possession with intent to distribute or possession or distribution, whichever count, as I say, they elect, and I certainly think it was part of that transaction, even though it occurred down in Florida and, therefore, I will deny your motion on that.

*Record,* Vol. VII at p. 11.

At the Florida trial, which commenced several days after Smith was found guilty in North Carolina, defendant's counsel realized the impact of this evidence and hastily prepared a motion to dismiss based on double jeopardy grounds. The court denied this motion relying on *United States v. McDonald,* 692 F.2d 376 (5th Cir.1982).[3] The Florida trial court said, "[i]f the defendant distributed cocaine in Florida, this is a separate and distinct act from the distribution of cocaine in North Carolina."

The double jeopardy clause of the Fifth Amendment provides that "nor shall any

---

1. In the Florida trial appellant was not tried for possession of cocaine with intent to distribute or with distribution of cocaine on or about September 13, 1983.

2. Trial counsel objected on the grounds that the evidence was: (1) beyond the scope of the indictment; (2) did not meet the admissibility requirements for a prior act under F.R.E. 404(b); (3) that the defendant had not been afforded a hearing under *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978) *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979); and that the evidence was inadmissible pursuant to F.R.E. 403.

3. Appellant's claims are highlighted by looking at the overlap of the evidence submitted by the government in the two trials.

| Fla. Exh. No. | N.C. Exh. No. | Description |
|---|---|---|
| 6 | 1 | 1 gram sample of cocaine |
| 8 | 2 | 3 foil-wrapped packages of cocaine |
| 8 | 4 | American Tourister suitcase containing 10 kilograms of cocaine |
| 9 & 9(a) | 5(a)—(d) | Photos of suitcase containing cocaine |

| Fla. Exh. No. | N.C. Exh. No. | Description |
|---|---|---|
| 5 | 6 | 8/25/83 video tape showing transfer of sample |
| 7 | 7 | 9/7/83 video tape of meeting between appellant and S.A. Glavin |
| | 8(a) & (b) | 9/13/83 telephone tape recording |
| 9 | | Transcript of 9/13/83 telephone recording |
| | 11 | 8/9/83 telephone recording |
| | 12 | Transcript of 8/9/83 telephone tape recording |

The one gram sample was marked for identification and submitted to defendant's counsel as a government proposed exhibit but was not actually moved into evidence in North Carolina. Furthermore, the government used the same witness, Agent Howard Glavin to introduce the exhibits at both trials. He was the only witness

person be subject for the same offense to be twice put in jeopardy." It is the purpose of this clause to render criminal proceedings conclusive and binding. In *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) the court stated:

> The "twice put in jeopardy" language of the Constitution thus relates to a potential, i.e. the risk that an accused for a second time will be convicted of the "same offense" for which he was initially tried.

398 U.S. at 326, 90 S.Ct. at 1759.

In determining whether a second prosecution is barred by double jeopardy, courts usually apply what has become known as the *Blockburger* test, i.e., where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). However, in *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) the court said:

> The *Blockburger* test is not the only standard for determining whether successive prosecutions involve the same offense. Even if two offenses are sufficiently different to permit the imposition of consecutive sentences, successive prosecutions will be barred in some circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first.

432 U.S. at 167 n. 6, 97 S.Ct. at 2226 n. 6, 53 L.Ed.2d at 195 n. 6. This is to protect the defendant from having to "run the gauntlet a second time." *Id.* Since 1889 it has been the constitutional rule in this country that:

> "where ... a person has been tried and convicted for a crime which has various incidents included in it, he cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense."

*In re Nielsen*, 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889). In this case this is exactly what happened. The appellant faced the same factual issues in both North Carolina and Florida. This was due, however, not to any fault of the appellant but rather to the government's manipulation of the evidence to create two separate crimes from the same transaction.

Additionally, as to the statutory double jeopardy claim, the court's reliance on *McDonald, supra* was misplaced. *McDonald* is easily distinguishable from the case at bar.[4] In *McDonald* the defendant attempted to convince the court that he could not be charged with two deliveries of quaaludes in the same indictment and given consecutive sentences. He had delivered 53,775 quaaludes to an undercover agent on one date. Four days later, a co-conspirator, at McDonald's direction, delivered 212,011 quaaludes to an undercover agent. These separate deliveries were charged in two separate counts of the indictment. McDonald attacked this on the basis of double jeopardy claiming that they were part of the same transaction. The court found no double jeopardy problem.

This case, however, involves two separate prosecutions, generally a prerequisite for a double jeopardy claim. *Webb v. Hutto*, 720 F.2d 375 (4th Cir.1983). Furthermore, the first transfer in this case was the sample of narcotics constituting 1.2 grams. The second transfer was the narcotics bargained for at the time of delivery of the sample. This is a wholly different situation than that which faced the court in *McDonald*.[5]

---

who could testify as to the transactions and conversation with the appellant.

**4.** It should be noted that *McDonald* is not binding precedent in this circuit.

**5.** Furthermore, in *McDonald,* the court was concerned that drug offenders would be subject to

but one conviction no matter how many deliveries or the quantity of those deliveries as long as the actions were motivated by a single financial plan. 692 F.2d at 380. This concern is not relevant in this case. The delivery of a sample is different than periodic deliveries of large quantities of drugs.

1172

The statutes in question, 21 U.S.C. § 841(a)(1), 21 U.S.C. § 802(8)(11) do define distribution as a delivery or an "actual, construction, or attempted transfer of a controlled substance." Yet, as the majority concedes, we interpret statutes presuming that Congress would not allow the government to manipulate the charges against a person so as to obtain multiple punishments for what is in essence the same offense. *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 1437–38, 63 L.Ed.2d 715 (1980). Again, this is exactly what happened here.

The trial court's finding in the North Carolina trial underscores this conclusion. In that trial the court found that the delivery of the sample and the delivery of the bargained for narcotics could not be bifurcated, i.e. that it was all "part of that transaction, even though it occurred down in Florida." The government cannot claim that there were two acts for the purpose of one trial and then turn around and claim that the acts are distinct for the purposes of another.

It may well be that the government over-tried its case in the North Carolina prosecution. However, it is the government that has the access to the testimony it will use at whichever trial it chooses. It did not have to introduce the evidence, testimony, and exhibits of the sample delivery in Florida in the North Carolina prosecution. However, once that tactical decision had been made, the government could not ignore that decision and reverse the strategy to artificially create a second offense against the defendant. In this case this resulted in the manipulation of the evidence and thus the courts to create two crimes, two convictions and multiple sentences.