[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14835
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cr-00006-ELR-AJB-7

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GUSTAVO ADOLFO RAMIREZ REYES,
a.k.a. Primo,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 1, 2018)

Before JORDAN, HULL and JULIE CARNES, Circuit Judges.

PER CURIAM:

Gustavo Adolfo Ramirez Reyes appeals his sentence of 60 months' imprisonment, which the district court imposed after he pled guilty to all four counts which named him in a thirteen-count multi-defendant indictment. Mr. Ramirez pled guilty (without a plea agreement) to one count of conspiracy to possess with intent to distribute at least 50 grams of actual methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A)(viii) and 846 (Count 1); one count of possession with intent to distribute at least *5* grams of actual methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(B)(viii) and 846 (Count 4); one count of possession with intent to distribute at least 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) and 18 U.S.C. § 2 (Count 5); and one count of possession with intent to distribute at least 50 grams of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(l) and (b)(1)(A)(viii) and 18 U.S.C. § 2 (Count 8).

Mr. Ramirez makes three arguments on appeal. First, he contends that the district court clearly erred in failing to grant him a minor role reduction because he was merely a courier in the drug distribution conspiracy. Second, he asserts that the district court clearly erred in adopting the presentence investigation report's drug quantities and misapplied the sentencing guidelines in determining his relevant conduct. Third, he claims that the district court abused its discretion in

failing to bifurcate or continue his sentencing hearing to allow him to independently test the narcotics for which he was being held responsible.

## I

Mr. Ramirez, who was then not incarcerated, was part of a methamphetamine trafficking operation headed by three individuals incarcerated in various Georgia prisons. His job was to deliver drugs to various buyers. He received instructions over the phone from one of the leaders of the operation about where, when, and to whom to deliver the drugs. He typically received the drugs he was to deliver at his home sometime on the day he was supposed to deliver them. He also occasionally communicated with buyers on the phone. He transported the drugs on foot because he did not have a car.

The presentence investigation report recommended that Mr. Ramirez's base offense level under U.S.S.G. § 2D1.1 be set at 34, based on 10,183 kilograms of marijuana, the equivalency amount for 61.15 grams of "actual" methamphetamine and 448.0 grams of "ice" methamphetamine. The presentence investigation report recommended a two-level reduction under U.S.S.G. § 2D1.1(b)(17) because Mr. Ramirez met the safety-valve criteria set forth under U.S.S.G. § 5C1.2, and a three-level reduction under U.S.S.G. § 3E1.1(a) and (b) for acceptance of responsibility, resulting in a total recommended offense level of 29. Based on Mr. Ramirez's

criminal history category of I, the resulting advisory guidelines custody range was 87-108 months of imprisonment.

The district court overruled Mr. Ramirez's objections to the presentence investigation, which are the same arguments he now makes on appeal, finding that the presentence investigation report's calculation of drug quantity was correct, and that Mr. Ramirez was not entitled to a minor role adjustment. The district court also denied Mr. Ramirez's motion to continue the sentencing hearing to allow him to independently test the drugs.

## II

We review for clear error a district court's factual determinations, including that of a defendant's role in an offense. *See United States v. Ramirez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). A defendant bears the burden of establishing his qualification for a minor role reduction by a preponderance of the evidence. *See United States v. Alvarez-Coria*, 447 F.3d 1340, 1343 (11th Cir. 2006). We review *de novo* a district court's application of the law to facts, including its interpretation and application of the sentencing guidelines. *See United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012). We review a district court's denial of a motion to continue sentencing for an abuse of discretion. *See United States v. Edouard*, 485 F.3d 1324, 1350 (11th Cir. 2007).

4

### III

### A

Our review of the record indicates that the district court properly considered all of the evidence regarding the conspiracy, including the testimony of Mr. Ramirez during the sentencing hearing, before deciding that he did not warrant a role reduction. *See United States v. Cruickshank*, 837 F.3d 1182, 1195 (11th Cir. 2016) (holding that a district court must take the totality of the circumstances into account when considering a role reduction). Mr. Ramirez was the self-described "middle person between . . . the white people that were calling and the Mexicans who . . . were directing the transactions." D.E. 714 at 50. That he communicated directly with one of the three leaders of the conspiracy, that he understood his role in the conspiracy, and that he admitted to having delivered methamphetamine on more than the three instances for which he was being sentenced also support the district court's conclusion that Mr. Ramirez was not "substantially less culpable than the average participant." U.S.S.G. § 3B1.2, application note 3(A). We find no clear error in the district court's denial of a mitigating role adjustment for Mr. Ramirez.

**B**

We also conclude that the district court properly followed the sentencing guidelines when it adopted the presentence investigation report's drug quantity calculations, with which the government had agreed.

The notes for the Drug Quantity Table state that unless "otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance."  U.S.S.G. § 2D1.1, application note (A).  The notes define "methamphetamine (actual)" as the "weight of the controlled substance, itself, contained in the mixture or substance."  U.S.S.G. §2D1.1, application note (B). Note (B) further clarifies, in "the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater."  *Id.*  The Drug Equivalency Tables of § 2D1.1 instruct that to convert methamphetamine to its marijuana equivalency, 1 gram of methamphetamine equals 2 kilograms of marijuana, while 1 gram of methamphetamine (actual) equals 20 kilograms of marijuana.  The table lists "ice" separately from normal methamphetamine, and indicates that 1 gram of "ice" equals 20 kilograms of marijuana.

6

Mr. Ramirez maintains that the two seizures of methamphetamine and one seizure of "ice," all of which occurred on separate days, needed to be converted to their marijuana equivalency using the same conversion method (all of them converted using either the "actual" or the "entire" weight).  But this argument is contrary the explanation in the guidelines.  The district court did not clearly err in its factual determination of the total weight of marijuana equivalency for which it held Mr. Ramirez responsible.  *See Johnson,* 694 F.3d at 1195.

## C

Finally, Mr. Ramirez has not shown that that the district court's denial of his motion for a continuance was an abuse of discretion which resulted in specific substantial prejudice.  *See United States v. Smith,* 757 F.2d 1161, 1166 (11th Cir. 1985).  In reviewing a district court's denial of a motion for continuance, we must decide if it was proper "in light of the circumstances presented, focusing upon the reasons for the continuance offered to the [district] court when the request was denied."  *Edouard*, 485 F.3d at 1350.

Mr. Ramirez argued that because the presentence investigation report found that he was responsible for 10,183 equivalent kilograms of marijuana, and because that weight was very close to the 10,000 kilogram threshold below which his base offense level would have been 32 instead of 34, he should be allowed to have the drugs independently tested.  But as the government explained at the sentencing

7

hearing, Mr. Ramirez had not challenged the laboratory's testing procedures or methodology, and the laboratory's stated margin of error was 0.2 grams.  In order to change his base offense level, then, the laboratory's error would have needed to be a 9.0-gram error, 45 times its stated margin.  As a result, the district court was well within its discretion to reject Mr. Ramirez's request for a continuance.

In addition, Mr. Ramirez cannot show he was substantially prejudiced by the district court's denial, because his sentence of 60 months' imprisonment is still below the guideline range for a base offense level of 32.  Thus, his belief that additional drug testing would further lower his sentence appears quite speculative. *See Smith*, 757 F.2d at 1166.

## IV

We affirm Mr. Ramirez's 60-month sentence for the reasons set forth above.

**AFFIRMED.**