[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11533
Non-Argument Calendar
_____

D.C. Docket No. 8:14-cr-00062-MSS-AEP-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STEPHANIE DASINGER,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 24, 2016)


Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Stephanie Dasinger appeals her convictions and total life sentence, after a jury trial, for conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(a); possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(a); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  Upon consideration of the parties' briefs and a thorough review of the record, we affirm.

## I. BACKGROUND

### A. Facts[1]

Dasinger and her boyfriend Jefferson Patterson were methamphetamine dealers.  Although they did not share a supplier, they had common customers.  On October 7, 2013, they drove to a Days Inn in Brooksville Florida in a Toyota Avalon Dasinger had borrowed from a friend.  They both brought methamphetamine to the motel; Patterson brought eight ounces of pink methamphetamine and Dasinger brought four ounces of white methamphetamine.  They also brought two scales and some plastic sandwich bags, which, according to Patterson, were for weighing and packaging the drugs for sale.  Their acquaintance,

---

[1] We derive the facts herein from both the transcript of the hearing on Dasinger's motion to suppress and the trial transcript.  In reviewing the denial of her motion to suppress, we review the entire record, including evidence presented at trial.  *See United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007).  Our evaluation of Dasinger's sufficiency of the evidence argument relies solely on evidence presented at trial.  *See Musacchio v. United States*, 136 S. Ct. 709, 715 (2016).

James Lloyd, had rented two rooms in the motel, and Dasinger and Patterson settled into one of them. At some point, one of Dasinger's customers came to the motel to buy drugs but had no money; thus, there was no sale.

The next day, in the parking lot of the Days Inn, Florida Highway Patrol troopers stopped Lloyd and found illegal narcotics in his car. Lloyd told the officers that he had rented one room at the motel. Officer Bobby Hartzig then requested permission to search Lloyd's room, number 224, and Lloyd consented to the search. The officers found a small amount of pink methamphetamine in the motel room. Officer Hartzig then contacted Officer Luis Rios and asked him to bring a drug-detection dog to the motel.

Meanwhile, Patterson and Dasinger learned that police were in the area, so they decided to hide their contraband. Dasinger hid her four ounces of methamphetamine in a backpack. The backpack also contained Patterson's drugs, as well as his gun, which he maintained he brought to the motel to keep it from getting stolen. Patterson then hid the backpack in the trunk of the Toyota Avalon, returning the keys to the nightstand in the motel room. Dasinger and Patterson hid the scales and plastic sandwich bags under the bed.

During the officers' search of room 224, motel employees told the officers that Lloyd had also rented a second room, number 258. The employees produced hotel records showing that Lloyd had signed and paid for both rooms. When

3

presented with these records, Lloyd confirmed that he had rented room 258, but stated he had no key to the room and did not know who was staying there. Lloyd nonetheless gave his consent to search room 258.

Moments later, Officers Hartzig and Rios arrived at room 258, where Dasinger and Patterson were staying. Officer Hartzig knocked on the door. When Dasinger opened the door, Hartzig explained that they had searched Lloyd's other room with his consent and found illegal narcotics. He also explained that Lloyd had rented room 258 and had consented to a search of that room as well. Hartzig also told Dasinger that motel staff had asked the officers to remove Dasinger and Paterson from the room because of illegal activity in room 224. Dasinger confirmed that she had not rented room 258. Hartzig then asked to enter, and Dasinger obliged.

The officers saw items and clothing throughout the room, including a computer tablet, a plastic bag of clothes by the door, and two sets of keys on the nightstand. The officers reminded Dasinger and Patterson that they would need to leave and then asked them to identify their belongings. Dasinger and Patterson claimed only the bag of clothes; they did not claim the keys. They told the officers that they would need a ride because they had been dropped off at the motel.

The officers then separated the two for individual questioning. Hartzig questioned Patterson in the room while Rios questioned Dasinger in the hallway.

4

Patterson confessed that they had been smoking marijuana in the room and told Hartzig that he would find marijuana in an ashtray on the nightstand. The officers then searched the room and found a smoked "blunt, paper rolled around marijuana," in the ashtray. Doc. 120 at 21.[2] They also found the two scales and box of clear sandwich bags under the bed, along with a large wad of cash on Patterson's person.

Hartzig's interest then shifted to the car keys, which he thought were out of place considering that Dasinger and Patterson had told him they did not have a car and would need a ride. Although she had previously failed to claim ownership of the keys, Dasinger now stated that they were hers and Patterson's, but that neither car, a Dodge and a Toyota, was on the motel premises.[3] Skeptical, Hartzig picked up one set of keys, pressed a button on the key fob, and heard an alert from outside the room. Rios could see from the motel room balcony a green Toyota Avalon responding to the fob. Dasinger then changed her story. She explained she had borrowed a friend's Toyota and driven it to the motel, but she had not wanted to tell the officers because she had no driver's license. Given the drugs and drug-related paraphernalia found in Lloyd's car, Lloyd's other motel room, and

---

[2] Citations to "Doc." refer to docket entries in the district court record in this case.

[3] The government contends that Dasinger denied ownership of the keys before Officer Hartzig picked them up. The district court found otherwise, and this finding was not clearly erroneous. Indeed, Rios testified that, before Hartzig grabbed the keys, Dasinger said the keys belonged to their personal vehicles. He also testified that Dasinger never denied ownership of the keys.

Dasinger and Patterson's room, along with Dasinger's shifting story, the officers were on alert for additional criminal activity.

Hartzig next asked if he could search the Toyota, but Dasinger said no, explaining that the car did not belong to her. Rios then retrieved the drug-detection dog and walked around the Toyota. The dog alerted to the trunk area of the car. Next, Rios used the keys to open the trunk, where he found the backpack containing about 12 ounces of pink and white methamphetamine, 34 ounces of marijuana, a loaded gun, and about $4,900 in cash.

The officers arrested Dasinger and Patterson. After Dasinger was read her *Miranda*[4] rights, she confessed that four ounces of the methamphetamine belonged to her and the rest belonged to Patterson, that she sold methamphetamine, and that Patterson owned the gun. She also stated that she had borrowed the car from a friend.

## B. Procedural Background

A federal grand jury indicted Dasinger on four charges: (1) conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count One); (2) possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) (Count Two); (3) possession of a firearm in furtherance of a drug

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Three); (4) and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count Five).[5]  The grand jury also indicted Patterson, but he took a plea deal in exchange for testifying against Dasinger.

On July 15, 2014, Dasinger moved to suppress the methamphetamine and firearm seized from the Toyota.  She argued that the officers searched her motel room without her consent, detained her and Patterson without reasonable suspicion, and illegally seized her car keys, all in violation of the Fourth Amendment.  The government responded on July 28, 2014.  The court held an evidentiary hearing on August 21, after which it denied the motion.

The trial was set for Monday, September 15, 2014.  On the Friday before, Dasinger filed a motion for a continuance.  She asserted that two days earlier her counsel had received a call from a person identifying as James Lloyd.  The caller told the lawyer that he had not consented to the search of Dasinger and Patterson's room.  Dasinger's attorney was unable to reach the caller again for follow-up, however.  Dasinger requested a continuance to investigate this call and rehearing on the motion to suppress based on what she hoped would be newly discovered evidence.

---

[5] The government also filed an information and notice of Dasinger's prior convictions subjecting her to a mandatory minimum life sentence, pursuant to 21 U.S.C. § 841(b).

The district court denied the motion, noting that Dasinger filed it over a month after the government responded to her motion to suppress and that she had "ample time between the filing of the Government's response and the hearing to locate and interview Lloyd."  Doc. 66 at 1-2.  The court rejected Dasinger's request to allow her essentially to begin her investigation into Lloyd "on the eve of trial." *Id.* at 2.  The court nonetheless granted Dasinger an opportunity to present Lloyd's testimony before the trial began, if he could be located.  She was unable to locate Lloyd and thus did not present his testimony.

The trial began as scheduled, with the government's presentation lasting one day.  Patterson testified about his and Dasinger's methamphetamine business and specifically about their conduct the day they were arrested.  Hartzig and Rios testified about the search of the motel room and Dasinger's car.  A government witness testified about Dasinger's confession after her arrest and explained that the amount of methamphetamine found in the backpack in Dasinger's borrowed car was far more than could be for personal use.[6]

On the next day, the government rested and Dasinger chose not to put up evidence in her defense.  Dasinger moved for judgment of acquittal on all counts,

---

[6] Dasinger also stipulated (1) to the weight of the methamphetamine found in the backpack, which was far greater than 50 grams, (2) that she had previously been convicted of a felony and was thus prohibited from possessing a firearm, and (3) that the gun found in the backpack was manufactured outside of the State of Florida, traveled into the state, and affected interstate commerce.

which the court denied.  Later that day, the jury issued its verdict of guilty on Count 1, conspiracy to possess methamphetamine with the intent to distribute, and Count 2, possession of methamphetamine with the intent to distribute.  The jury also found Dasinger guilty on Count 3, possession of a firearm in furtherance of a drug trafficking crime, but not guilty on Count 5, possession of a firearm by a convicted felon.

The probation office prepared a presentence investigation report ("PSI"), recommending the statutory minimum term of life imprisonment.  *See* 8 U.S.C. § 841(b)(1)(A) (providing a mandatory minimum sentence of life imprisonment for a person convicted under § 841(a)(1), whose crime involved more than 50 grams of methamphetamine and who has two or more prior felony drug offenses).  Neither side objected to the PSI, but at the sentencing hearing Dasinger argued that her mandatory life sentence violated the Eighth Amendment to the United States Constitution.  The district court agreed with the Sentencing Guidelines calculations in the PSI but was troubled by the "[d]raconian" nature of the mandatory life sentence, which the court stated was "far more than necessary to comply with the statutory purposes of sentencing as suggested by Congress."  Doc. 123 at 13.  The court found "no basis in law from the standpoint of the need to deter criminal activity for a Defendant to be sentenced to life imprisonment for the type of criminal history" Dasinger had.  *Id.*  Nonetheless, constrained by the mandatory

9

minimum, the district court sentenced Dasinger to life imprisonment.  This appeal followed.

## II. DISCUSSION

Dasinger challenges the district court's denial of her motion to suppress, motion for a continuance and rehearing on the motion to suppress, and motion for judgment of acquittal.  Dasinger also argues that her conviction on Count 3, possession in furtherance of drug trafficking, was fatally inconsistent with her acquittal on Count 5, possession of a gun by a convicted felon.  Finally, Dasinger argues that her mandatory life sentence for the drug trafficking offenses is substantively unreasonable and unconstitutional under the Eighth Amendment. We consider each argument in turn.

## A. Motion to Suppress

Dasinger first argues that the district court erred in denying her motion to suppress the methamphetamine and firearm recovered from her borrowed car because it was found as a result of an unconstitutional (1) entry into and search of her motel room and (2) seizure of her keys.  In considering the district court's denial of a motion to suppress, we review factual determinations for clear error and the application of law to the facts *de novo,* construing all facts in the light most favorable to the government.  *United States v. Boyce,* 351 F.3d 1102, 1105 (11th Cir. 2003).

**1. Entry into and Search of the Motel Room**

We reject Dasinger's argument that the officers unreasonably relied on Lloyd's consent to enter and search her motel room. The Fourth Amendment provides protection against unreasonable searches and seizures. U.S. Const., amend. IV. A guest in a motel room is entitled to protection against unreasonable searches and seizures no less than a tenant of a house. *See Stoner v. California,* 376 U.S. 483, 490 (1964). Although officers generally may not search a home or motel room without a warrant, they may conduct a search "with the voluntary consent of an individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109 (2006).

Officers may obtain consent from a third party who possesses common authority over, or a sufficient relationship to, the premises or the effects sought to be inspected. *United States v. Matlock*, 415 U.S. 164, 171 (1974). Whether an individual possessed common authority depends on the mutual use of the property by persons generally having joint access or control. *Id.* at 171 n.7. The government bears the burden of establishing common authority. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "The determination of consent to enter must be judged against an objective standard" and turns on whether "facts available to the officer at the moment" would lead "a man of reasonable caution [to believe]

11

that the consenting party had authority over the premises[.]" *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008) (internal quotation marks omitted). But where a present, objecting resident expressly refuses to consent to a warrantless search, the search is unreasonable as to the objecting resident. *Randolph*, 547 U.S. at 120.

The district court did not err in concluding that Lloyd's consent justified the officers' search of room 258. The evidence showed that Lloyd possessed common authority over the motel room because he rented the room in his name, paid for it, and, as the district court found, could have entered and used the room if he so chose. These facts were available to the officers and support the conclusion that Lloyd was authorized to consent to a search of the room. Moreover, the record contains no evidence that Dasinger or Patterson objected to the officers' entry into the room or their search for drugs. To the contrary, the record shows that Hartzig asked Dasinger for permission to enter, and she obliged. Thus, the officers' entry into room 258 and subsequent search for narcotics was lawful.

### 2. The Officer's Handling of the Keys and Key Fob

Dasinger next argues that Hartzig's search exceeded the scope of Lloyd's consent when Hartzig picked up Dasinger's keys and pressed the button on the key fob. We assume for the purposes of our analysis that Hartzig's handling of the keys and key fob was a search or seizure under the Fourth Amendment.

As an initial matter, we agree with Dasinger that this action exceeded the scope of Lloyd's consent. "When an individual gives a general statement of consent without express limitations," the scope of the search is "constrained by the bounds of reasonableness" based on "what the parties knew at the time to be the object of the search." *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992) (internal quotation marks omitted). "Permission to search a specific area for narcotics, for example, may be construed as permission to search any compartment or container within the specified area where narcotics may be found." *Id.* The government bears the burden of showing that its search was within the scope of the consent. *See United States v. Blake*, 888 F.2d 795, 800 (11th Cir. 1989).

Here, Lloyd's consent was limited to a search for illegal narcotics. As the government readily concedes, "when [Lloyd] gave his consent, he presumably knew the officers had found methamphetamine both in his vehicle . . . and in the other room that he had rented (Room 224)**."** Appellee's Br. at 28. Thus, based on what the parties knew at the time, illegal narcotics were the object of the search of room 258. The government does not contend that the scope of Lloyd's consent extended beyond a search for illegal narcotics. Instead, the government suggests that manipulating car keys is like moving a towel lying on a bed, which we held in an unpublished opinion did not exceed the scope of a general consent when drugs were found nearby. *See United States v. Gordon*. 294 F. App'x 579, 581, 583

(11th Cir. 2003).  But unlike a towel lying on a bed, which could easily conceal hidden contraband, it is unlikely that contraband would be hidden among the keys on a key ring.  Thus, under the circumstances here, the handling of the keys and key fob, if a search or seizure, was not within the scope of Lloyd's consent.

We next turn to whether, under these circumstances, Hartzig's handling of the keys and key fob was an *unlawful* search or seizure.[7]  Our inquiry focuses on whether the action was reasonable.  *See Wyoming v. Houghton*, 526 U.S. 295, 299-300 (1999); *see also Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is reasonableness . . . ." (internal quotation marks omitted)).  "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."  *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).  We weigh "the degree to which [the search] intrudes upon an individual's privacy" against "the degree to which it is needed for the promotion of legitimate governmental interests."  *Houghton*, 526 U.S. at 300.

Under the totality of circumstances, Hartzig's manipulation of the keys and key fob was not an unreasonable search or seizure in violation of the Fourth Amendment.  To the extent Dasinger had a privacy interest in the identity of the

---

[7] We reject the government's contention that Dasinger abandoned the keys.  The district court found that Dasinger claimed a possessory interest in the keys before Hartzig picked them up.  This finding was not clearly erroneous.

car,[8] this interest was outweighed by the officers' legitimate interest in investigating the signs of criminal activity.  Before Hartzig briefly held the keys and pressed the key fob, he knew that drugs had been found in Lloyd's car and in both motel rooms.  He also had found scales and plastic bags, signs of drug distribution, but not the amount of drugs one would expect if drug sales were taking place.  Dasinger had also told him that the only items belonging to her were in a plastic bag on the floor and that she had no vehicle on the premises.  This statement seemed suspicious given the presence of two sets of car keys on the nightstand, but Hartzig's suspicion was further aroused when Dasinger claimed that the keys were hers but insisted nonetheless that the car was not on site.  In the light of the inconsistency and evidence that a drug operation was afoot, and in particular that drugs had been found in Lloyd's car, Hartzig's minimal intrusion into Dasinger's privacy—holding her keys a few seconds and clicking the key fob

---

[8] Dasinger's privacy interest in the identity of the car was not diminished simply because she had borrowed the car from a friend.  *See United States v. Miller*, 821 F.2d 546, 548 (11th Cir. 1987) (holding that the defendant had a legitimate expectation of privacy in a borrowed car).  We recognize, however, that one generally has a "diminished expectation of privacy in an automobile."  *United States v. Knotts*, 460 U.S. 276, 281 (1983).  Other courts have held that a person has little or no reasonable expectation of privacy in the identity of his car.  *See, e.g.*, *United States v. Cowan*, 674 F.3d 947, 955-57 (8th Cir. 2012) (holding that because the defendant lacked a reasonable expectation of privacy in the identity of his car, the use of a key fob attached to legally seized keys did not violate the Fourth Amendment); *see also United States v. $109,179 in United States Currency*, 228 F.3d 1080, 1087-88 (9th Cir. 2000) (holding that inserting a car key into the lock of a car door to identify the vehicle as belonging to the defendant was not an unreasonable search because the defendant "had a minimal expectation of privacy in the lock of his car door").

15

to test the accuracy of Dasinger's story—did not violate the Fourth Amendment.

Therefore, the district court did not err in denying Dasinger's motion to suppress.[9]

## B. Motion for Rehearing and Continuance

Dasinger next argues that the district court erred in denying her motion requesting a continuance and rehearing on the motion to suppress, which was based on a telephone call from a person identifying as Lloyd and stating that he did not consent to the search. We review both the denial of a motion to continue trial and the denial of a request for rehearing for abuse of discretion. *United States v. Valladeres*, 544 F.3d 1257, 1261 (11th Cir. 2008) (continuance); *Lawson v. Singletary*, 85 F.3d 502, 507 (11th Cir. 1996) (construing a motion for rehearing as a motion to reconsider and reviewing the denial of the motion for abuse of discretion). It is the defendant's burden to demonstrate that the denial of a motion to continue was an abuse of discretion and that substantial prejudice resulted. *United States v. Smith,* 757 F.2d 1161, 1166 (11th Cir. 1985). In *Smith*, we held that the district court did not abuse its discretion in denying the defendant's motion for a continuance because the defendant failed to uncover the evidence he sought,

---

[9] Dasinger challenges the canine search of the Toyota and subsequent search of its trunk only to the extent they occurred after the illegal seizure of her keys. She mounts no challenge to the search of the car as unconstitutional on its own. Because we hold that no Fourth Amendment violation occurred in the search of Dasinger's motel room or handling of her keys and key fob, we reject Dasinger's argument that the subsequent searches were unconstitutional.

16

despite having time to do so, and because the information he sought "appeared to

be quite speculative." *Id.*

Likewise, the district court did not abuse its discretion when it denied

Dasinger's motion because she had ample opportunity to find Lloyd before the

hearing and was unable to show any probability that she would be able to find him

given more time, that he would testify, or that his testimony would demonstrate

that he did not consent. Further, the district court stated that if Dasinger found

Lloyd before trial, the court would allow her to present his testimony in support of

a renewed motion to suppress. Accordingly, the district court did not abuse its

discretion in denying the motion. *See Smith,* 757 F.2d at 1166.

## C. Motion for Judgment of Acquittal

Next, Dasinger challenges the sufficiency of the evidence against her. "We

review sufficiency of the evidence *de novo*, viewing the evidence in the light most

favorable to the government and drawing all reasonable inferences and credibility

choices in favor of the jury's verdict." *United States v. Ramirez*, 426 F.3d 1344,

1351 (11th Cir. 2005) (internal quotation marks omitted). "[W]e need only

determine that a reasonable fact-finder could conclude that the evidence

established the defendant's guilt beyond a reasonable doubt." *United States v.*

*Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005) (internal quotation marks omitted)

"The evidence may be sufficient even when it does not exclude every reasonable

hypothesis of innocence or is not wholly inconsistent with every conclusion except that of guilt, since a jury is free to choose among reasonable constructions of the evidence." *Id.* (alteration adopted and internal quotation marks omitted).

Turning first to Count 2, we conclude that the record sufficiently supported Dasinger's conviction. To sustain a conviction on Count 2 under 21 U.S.C. § 841(a)(1), "the government must show that a defendant knowingly possessed the controlled substance with the intent to distribute it." *United States v. Albury*, 782 F.3d 1285, 1293 (11th Cir. 2015) (internal quotation marks omitted). Knowledge, possession, and intent can be proven by either direct or circumstantial evidence. *United States v. Poole,* 878 F.2d 1389, 1391-92 (11th Cir. 1989). Intent to distribute can be inferred from the existence of implements such as scales commonly used in connection with the sale of narcotics, *id.* at 1392, and from the quantity of contraband found. *Mercer,* 541 F.3d at 1076.

The government presented sufficient evidence to sustain a conviction on Count 2. Dasinger confessed to possessing four ounces of methamphetamine, which a government witness testified was far greater than could be for personal use. Patterson testified that Dasinger was in the business of selling methamphetamine and confirmed that he had brought the scales and plastic sandwich bags to assist in selling the drugs. Patterson also confirmed that a buyer came to their motel room to buy methamphetamine from Dasinger. These facts are

18

sufficient to support Dasinger's conviction on Count 2 for possession with the intent to distribute methamphetamine.

The record also supports Dasinger's conviction on Count 1, conspiracy to possess methamphetamine with intent to distribute.  To sustain a conviction on Count 1 under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that: "(1) an illegal agreement existed to possess with intent to distribute a controlled substance; (2) [the defendant] knew of the agreement; and (3) [the defendant] knowingly and voluntarily joined the agreement." *United States v. Isnadin*, 742 F.3d 1278, 1305 (11th Cir. 2014).  The government may rely on circumstantial evidence to prove the elements of conspiracy.  *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998).  Presence at the scene alone is inadequate to establish guilt, but is "material, highly probative, and not to be discounted." *Isnadin*, 742 F.3d at 1305-06 (internal quotation marks omitted).

Although there was no direct evidence of an agreement between Dasinger and Patterson, circumstantial evidence supports the jury's finding that they were jointly involved in a scheme to possess with intent to distribute methamphetamine. First, the quantity of methamphetamine, the loaded firearm, the presence of a large amount of cash, and Dasinger's admission that she regularly distributed methamphetamine in the area support the finding that Dasinger and Patterson harbored the intent to distribute.  *See Mercer,* 541 F.3d at 1076; *see also United*

*States v. Terzado–Madruga,* 897 F.2d 1099, 1120 (11th Cir. 1990) (recognizing that the presence of firearms, "tools of the trade" for drug dealers, is suggestive of a conspiracy to sell drugs). Second, the evidence was sufficient for the jury to conclude that Dasinger and Patterson were not merely in a romantic relationship, as Dasinger contends. Instead, the evidence showed that both were methamphetamine dealers with common customers. On October 8, 2013, they each took a large quantity of methamphetamine into the same room where a customer came to purchase drugs, and both hid their drugs in the same backpack with a loaded gun, which Patterson placed in Dasinger's borrowed car. This evidence was sufficient to support a finding that she voluntarily reached an agreement with Patterson to possess methamphetamine with the intent to distribute, and thus the evidence was sufficient to sustain Dasinger's conviction on Count 1.

The government also presented sufficient evidence to sustain the conviction on Count 3. To convict on Count 3 under 18 U.S.C. § 924(c)(1)(A), the government had to show that (1) Dasinger knowingly possessed a firearm (2) in furtherance of any federal drug trafficking crime. *United States v. Woodard*, 531 F.3d 1352, 1362 (11th Cir. 2008). Although the record does not support a finding of actual possession, the evidence suffices to support a finding of possession under *Pinkerton v. United States,* 328 U.S. 640, 645-48 (1946).[10] Under *Pinkerton*, a

---

[10] The district court instructed the jury on *Pinkerton* liability in the context of Count 3.

defendant may be liable under § 945(c) for a co-conspirator's possession of a firearm if the possession was reasonably foreseeable. *United States v. Bell*, 137 F.3d 1274, 1275 (11th Cir. 1998); *see also Isnadin*, 742 F.3d at 1307. The record showed that Dasinger knew Patterson had a gun and had previously carried it in the backpack. She also confessed that she might have handled the gun a few weeks before her arrest. This evidence is sufficient to show that Dasinger should have expected that Patterson would possess the gun when the two engaged in selling drugs, and thus suffices to support the possession element under § 924(c) and *Pinkerton*.

We next turn to the "in furtherance" element, which requires proof that the firearm helped, furthered, promoted, or advanced the drug trafficking. *Woodard*, 531 F.3d at 1362. To satisfy this element, the government must establish some nexus between the firearm and the drug trafficking offense. *Isnadin*, 742 F.3d at 1307. In determining possession in furtherance of a drug trafficking crime, we have considered:

> The type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found.

*Woodard*, 531 F.3d at 1362 (internal quotation marks omitted).

21

Sufficient evidence showed the requisite nexus for Dasinger's conviction for possession of a firearm in furtherance of her drug trafficking crime. Dasinger and Patterson were jointly involved in the distribution of methamphetamine, for which a firearm is a tool of the trade. *See Terzado–Madruga,* 897 F.2d at 1120. The gun was loaded, easily accessible, and found in close proximity to the drugs and cash. *See id.*; *Woodard*, 531 F.3d at 1362. A reasonable fact finder could conclude, based on this evidence, that Patterson's possession of the gun was in furtherance of Patterson and Dasinger's trafficking in methamphetamine. The evidence, therefore, is sufficient to support Dasinger's conviction on Count 3, and the district court did not err in denying her motion for judgment of acquittal.

**D. Consistency of Convictions**

Dasinger next argues that her conviction for possession of a firearm in furtherance of a drug trafficking crime was improper because this conviction was inconsistent with the jury's acquittal on the charge for possession of a firearm by a convicted felon. Even assuming these two convictions were inconsistent, "a jury's verdicts are insulated from review on the ground that they are inconsistent, as long as sufficient evidence supports each finding of guilt." *Albury*, 782 F.3d at 1295 (internal quotation marks omitted and alteration adopted). As we explained above, sufficient evidence supported Dasinger's firearm-possession conviction. We therefore affirm the conviction on Count 3.

22

**E. Mandatory Life Sentence**

Dasinger argues finally that her mandatory life sentence was (1) substantively unreasonable and (2) unconstitutional under the Eighth Amendment's prohibition against cruel and unusual punishment. We reject Dasinger's substantive unreasonableness argument because the district court sentenced her to the mandatory minimum. "It is well-settled that a district court is not authorized to sentence a defendant below the statutory mandatory minimum unless the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 or the defendant falls within the safety-valve of 18 U.S.C. § 3553(f)." *United States v. Castaing-Sosa*, 530 F.3d 1358, 1360-61 (11th Cir. 2008). The "safety valve" provision only applies if the defendant does not have more than one criminal history point, as determined by the sentencing guidelines. 18 U.S.C. § 3553(f)(1). Here, the government did not file a substantial assistance motion, and Dasinger did not qualify for safety-valve relief due to her extensive criminal history. Because Dasinger received a statutorily-mandated life sentence, *Castaing-Sosa* forecloses her argument that her sentence was substantively unreasonable. *See id.*, 530 F.3d at 1361.

Precedent also forecloses Dasinger's Eighth Amendment challenge to her life sentence. We have held that mandatory minimum life sentences for drug trafficking convictions under 21 U.S.C. § 841 "cannot be said to be excessive in

23

relation to the sentences for other severe federal crimes," and therefore do not violate the Eighth Amendment's prohibition against cruel and unusual punishment. *United States v. Holmes*, 838 F.2d 1175, 1178-79 (11th Cir. 1988).  Under *Holmes*, we must reject Dasinger's Eighth Amendment argument and affirm her life sentence.

## III. CONCLUSION

For the foregoing reasons, we affirm Dasinger's convictions and sentence.

**AFFIRMED.**